*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0198P (6th Cir.)
File Name: 02a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DESHANNON FITZGERALD,
　　　　*Petitioner-Appellee,*

　　　　*v.*

PAMELA WITHROW, Warden,
　　　　*Respondent-Appellant.*

No. 00-2126

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-72684—Avern Cohn, Senior District Judge.

Argued: November 28, 2001

Decided and Filed: June 6, 2002

Before: GUY and BOGGS, Circuit Judges; and CARR,[*]
District Judge.

---

**COUNSEL**

**ARGUED:** Janet A. Van Cleve, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, for Appellant.
Nancy L. McGunn, FEDERAL PUBLIC DEFENDERS

---

[*]The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

OFFICE, Detroit, Michigan, for Appellee.  **ON BRIEF:**
Janet A. Van Cleve, OFFICE OF THE ATTORNEY
GENERAL, Lansing, Michigan, for Appellant.  Andrew N.
Wise, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit,
Michigan, for Appellee.

_____

## OPINION

_____

   BOGGS, Circuit Judge.  This case requires this court to
determine the scope of a defendant's waiver of his Sixth
Amendment right to a trial by jury.  The State of Michigan
appeals the district court's order granting DeShannon
Fitzgerald's petition for a writ of habeas corpus.  After
waiving his right to a jury trial, Fitzgerald was tried by the
bench, was convicted of kidnaping, and was sentenced to life
imprisonment.  When the state court judge who took
Fitzgerald's jury trial waiver fell ill on the eve of trial, another
judge of the state court was substituted to conduct
Fitzgerald's trial and denied Fitzgerald's request for a jury
trial.  On habeas, the district court held that certain remarks in
the first judge's colloquy with Fitzgerald limited Fitzgerald's
waiver of a jury trial only to the situation where he would
receive a bench trial before the first judge.  According to the
district court, the second judge's insistence that Fitzgerald
proceed with a bench trial before the second judge exceeded
the terms of the partial waiver and therefore violated his
residual Sixth Amendment right to a jury trial.  For the
reasons set forth below, we reverse the district court.

## I

   Fitzgerald and Romallis Colvin were charged with the 1991
kidnaping of Leroy Huckleberry.  The State alleged that
Fitzgerald and Colvin had abducted Huckleberry from the
streets of Detroit on July 16, 1991, placed him in the back of
a van, bound his hands and legs, and covered his head.
Huckleberry's captors contacted his family several times,
threatening to kill Huckleberry if a ransom was not paid.

*Washington*, 466 U.S. 668, 691 (1984). Nothing in the colloquy, especially read in context, contradicts the explicit written waiver in which Fitzgerald consents to a bench trial before any judge of the Michigan Recorder's Court. The statements in the record would not lead a reasonable defendant to believe that he was consenting only to a bench trial before a particular judge. Indeed, the actions of Fitzgerald and his counsel indicate that they were very aware of the effect of the written waiver.

### III

Because we find Fitzgerald's waiver valid for a bench trial before any judge of the Michigan Recorder's Court, we REVERSE the district court's order granting Fitzgerald's habeas petition. Today's decision completely resolves Fitzgerald's Sixth Amendment claim. Fitzgerald has abandoned his Eighth Amendment claim as a condition of his habeas petition not being dismissed for including unexhausted claims and in accordance with this court's earlier decision in this matter. *See Fitzgerald v. Withrow*, No. 99-1426, 2000 WL 1033032 (6th Cir.). Because all of Fitzgerald's claims have been either dismissed by the district court, resolved against him by this court, or abandoned by Fitzgerald, we REMAND this action to the district court for it to dismiss Fitzgerald's petition for a writ of habeas corpus.

Finding his family unwilling to pay a ransom, his captors released him within eighteen hours of abducting him. Examinations of Huckleberry after his release indicated that he had been beaten and burned.

Huckleberry testified that he never saw the faces of his captors. Huckleberry did say, however, that one of his captors called the other "Shannon." At two separate line-ups, in which Huckleberry did not see the faces of the participants, but only heard their voices, Huckleberry identified the voices of Fitzgerald and Colvin as those of his captors.

Judge Wendy Baxter of the Michigan Recorder's Court was assigned for the joint trial of Fitzgerald and Colvin. On Monday, July 15, 1991, in proceedings before Judge Baxter, Fitzgerald waived his right to a jury trial. Judge Baxter conducted an extensive colloquy with Fitzgerald, explaining, among other things, that she would be determining his guilt or innocence, that she had heard evidence in pretrial proceedings that would be inadmissible for the ultimate trier of fact, and that she would attempt to ignore that evidence.

Colvin did not waive his right to a jury trial, and Judge Baxter began the jury selection process for Colvin. At the end of the day, counsel had not completed the selection of Colvin's jury. On Tuesday, July 16, 1991, Judge Leonard Townsend announced that Judge Baxter had fallen ill and that Townsend would preside over Colvin's jury trial and Fitzgerald's bench trial. Fitzgerald immediately requested a jury trial. Judge Townsend, noting that Fitzgerald had already waived his right to a jury trial, denied Fitzgerald's request and held that he would determine Fitzgerald's guilt in a bench trial.

On August 11, 1991, Judge Townsend found Fitzgerald guilty of kidnaping. Later, Townsend sentenced Fitzgerald to life imprisonment. Fitzgerald appealed to the Michigan Court of Appeals, claiming that he had only partially waived his right to a jury trial, and only to the extent that he had consented to a bench trial before Judge Baxter. The bench trial before Judge Townsend, according to Fitzgerald, violated

his Sixth Amendment right to a trial by jury. The Michigan Court of Appeals affirmed Fitzgerald's conviction, *People v. Fitzgerald*, No. 146271 (Mich. Ct. App. June 29, 1994), and the Michigan Supreme Court denied Fitzgerald leave to appeal. *People v. Fitzgerald*, No. 100249 (Mich. Feb. 28, 1995).

In July 1995, Fitzgerald filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, contesting his conviction and sentence on numerous grounds. The district court determined that some of Fitzgerald's claims had not been exhausted in state court, but should nonetheless be denied for lack of merit. The court held, however, that two of Fitzgerald's claims – that his life sentence was unconstitutionally disproportionate under the Eighth Amendment and that his Sixth Amendment right to a jury trial had been denied – had some promise and appointed him counsel for the litigation of those claims. *Fitzgerald v. Withrow*, No. 95-72684 (E.D. Mich. Nov. 20, 1996).

Fitzgerald appealed the district court's partial denial of his petition to this court. This court dismissed his first appeal, the district court having issued a certificate of non-appealability. *Fitzgerald v. Withrow*, No. 96-2536 (6th Cir. Aug. 26, 1997).

Fitzgerald's newly appointed counsel filed supplemental briefs on the remaining two claims. Although the district court found Fitzgerald's Eighth Amendment claim unexhausted, it granted Fitzgerald's petition for habeas corpus on his Sixth Amendment claim. *Fitzgerald v. Withrow*, No. 95-72684 (E.D. Mich. Mar. 15, 1999). The State of Michigan appealed to this court. We reversed the district court's order granting the habeas petition, holding that Fitzgerald's petition "mixed" exhausted and unexhausted claims and therefore could not be granted under the Supreme Court's total exhaustion rule announced in *Rose v. Lundy*, 455 U.S. 508 (1982). *Fitzgerald v. Withrow*, No. 99-1426, 2000 WL 1033032 (6th Cir.). We accordingly remanded to the district

In any event, Judge Baxter's remarks in the colloquy do not sufficiently contradict the unambiguous language of the written waiver that Fitzgerald signed in that proceeding. The written waiver explicitly indicates that it constitutes consent to be tried by "*a* judge of the" recorder's court. In the face of the explicit written waiver, Fitzgerald's strained interpretation of Judge Baxter's remarks in the colloquy cannot be sustained.

Finally, the actions of Fitzgerald and his counsel indicate that they were exquisitely aware of the effect of the waiver as consenting to a bench trial before any judge of the court. First, when Fitzgerald's counsel, Terri Williams, announced to Judge Baxter her client's intention to waive jury trial, Williams and Fitzgerald were already in possession of the written waiver form and had reviewed it. JA at 266 (indicating that Williams had obtained the form from Judge Baxter's bailiff one-half hour before the colloquy). Their understanding of the effect of the written waiver had not even had a chance to be modified by Judge Baxter's colloquy. Second, Williams and Fitzgerald waited until the very last minute, just before the selection of a jury, to waive jury trial. To us, their delay reflects an acute awareness *both* of the possibility of another judge being substituted for the bench trial once they have waived the right to a jury trial *and* that such a substitution would be permitted by the waiver. By sitting on their motion until jury selection, Williams and Fitzgerald increased the probability that another judge would not be substituted. Williams as much as admitted her awareness of the waiver's scope, and her plan to minimize the possibility of another judge's substitution, in her argument to Judge Townsend the day after the waiver. Referring to the waiver, Williams said, "it was a strategic plan that apparently went awry in the absence of Judge Baxter today." JA at 270.

This court should not save defendants from their conscious, "strategic" choices. *See, e.g., Burger v. Kemp*, 483 U.S. 776, 794 (1987) (noting courts' unwillingness to correct "informed, strategic choices, made by counsel in the client's best interest," that later prove unfortunate); *Strickland v.*

THE COURT: "Let me make a record on all of the matters that we have discussed at side bar. I have heard many motions in this case. I am very familiar with the issues at bar. If Mr. Deshannon Fitzgerald wishes to waive his right to a trial by jury, I am then called upon to examine my conscience and determine whether or not I can be fair. I can be fair, I did that already when Counsel called it to my attention whether or not I wanted – when Counsel told me that she wanted this matter to be heard on behalf of her client without a jury and what I would be called upon to do at this point, Mr. Fitzgerald, is to determine your guilt or innocence based on whatever record developed in the trial and not on any prior records that we developed for any motions, do you understand that, sir? You have to stand up when you talk to the Court.

DEFENDANT FITZGERALD: Yes, Your Honor

THE COURT: And it is your desire to have me hear this case without a jury on your behalf, sir?

DEFENDANT FITZGERALD: Yes.

JA at 265-66.

Judge Baxter proceeded to inform the defendant that he had a constitutional right to a trial by jury. To us, Judge Baxter's comments appear more in the manner of warning the defendant that there is a particular risk in this bench trial of which he should be aware. Judge Baxter had already presided over pretrial motions and had been exposed to certain evidence that would not necessarily be admissible at trial. Judge Baxter informed Fitzgerald in the excerpt that she would be fair and would endeavor to rely on only that evidence admitted at trial. In the context of the colloquy's purpose — advising the defendant of the risks of proceeding by bench trial — a reasonable defendant would understand Judge Baxter's remarks as allaying concerns regarding her involvement in pre-trial proceedings rather than assuring that she personally would try the case.

court, ordering it either to dismiss Fitzgerald's petition or to permit Fitzgerald to abandon his unexhausted claims.

Fitzgerald voluntarily dismissed his unexhausted Eighth Amendment claim. The district court reentered its original ruling on his Sixth Amendment claim and granted his petition again. *Fitzgerald v. Withrow*, No. 95-72684 (E.D. Mich. Aug. 29, 2000). The State of Michigan now appeals the district court order granting Fitzgerald's petition for habeas corpus, based solely on his Sixth Amendment claim.

## II

Because Fitzgerald filed his petition for habeas corpus before April 24, 1996, the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) do not govern the standard by which this court reviews the decisions of state courts in this case. *See Lindh v. Murphy*, 521 U.S. 320 (1997). *See also* 28 U.S.C. § 2254(d)(1) (codifying the provisions of AEDPA concerning the standard of review). Accordingly, we may grant Fitzgerald's petition if his conviction is a violation of his federal constitutional rights. Under the pre-AEDPA standard, we review *de novo* the Michigan courts' determinations of law and overturn the factual findings of state courts only if contradicted by "clear and convincing evidence." *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001).

The sole question in this case is whether Fitzgerald waived his Sixth Amendment right to a jury trial to an extent that permitted the bench trial conducted by Judge Townsend. The State of Michigan falls into an understandable misconception of the relevant legal issue in this case. According to the State, Fitzgerald does not have a constitutional right to demand a bench trial with a particular judge. And the State is undoubtedly correct. We would never hold that a trial court was constitutionally required to honor a defendant's request for a bench trial before a particular judge. In fact, we are confident that a trial court need not grant a defendant's request for a bench trial at all. *United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983).

However, the Sixth Amendment entitles defendants to a jury trial. A defendant may waive that right and, if the state also consents, have a bench trial, *see, e.g.,* Mich. R. Crim. P. 6.401 (requiring the consent of the prosecutor and the approval of the court for proceeding with a bench trial), but we have required elaborate conditions for that waiver to be valid. We require that the defendant's waiver be "knowing, voluntary and intelligent." *United States v. Sammons*, 918 F.2d 592, 596 (6th Cir. 1990); *Martin*, 704 F.2d at 273. In the absence of a valid waiver, therefore, a defendant will be tried by a jury. Certainly, a defendant is not entitled to make a limited or conditional waiver of his right to a jury trial. However, the general rule may be modified only to the extent that the defendant actually and validly waives his Sixth Amendment right. The defendant retains any portion of the jury trial right that he has not validly waived. *See United States v. Groth*, 682 F.2d 578, 580 (6th Cir. 1982) (holding that waiver of jury trial did not extend to a retrial unless covered by terms of waiver).

Thus, the question before this court is not about the waiver that Fitzgerald was *entitled* to make, but the waiver that he actually made. Fitzgerald signed a written waiver of his right to a jury trial, which provided as follows: "I, having had opportunity to consult with counsel, do hereby in open Court voluntarily waive and relinquish my right to a trial by jury and elect to be tried *by a judge of the above named Court*, in which this cause is pending." (emphasis added).

In eerily similar circumstances, we held this precise written waiver sufficient to permit a bench trial by any judge on the court, not just by the judge who took the waiver. *See Sinistaj v. Burt*, 66 F.3d 804, 808-09 (6th Cir. 1995). In *Sinistaj*, Judge O'Brien of the Michigan Recorder's Court, the very court in this case, took the defendant's waiver of jury trial, which included a written waiver containing the exact language in the written waiver in this case. *Ibid.* Immediately before trial, *Judge Townsend* was substituted, just as he was in this case. Sinistaj immediately requested a jury trial when Townsend appeared, and Townsend denied his request. We

held that Sinistaj had consented to a jury trial before any judge of the court through the written waiver. *Id.* at 809. Our holding, however, relied on the fact that "the waiver was not judge specific, *and the record is devoid of any indication that Sinistaj was led to believe that the waiver applied only to a trial before Judge O'Brien.*" *Ibid.* (emphasis in original).

In applying our prior case law to this case, we must determine whether there is anything here that satisfies the qualification that we added in *Sinistaj*. In *Sinistaj*, the district court did not examine the details of the court's colloquy with the defendant regarding his desire to waive jury trial, only noting that such a colloquy had occurred. *See id.* at 806. In this case, Judge Baxter engaged in an extensive colloquy with Fitzgerald to determine, on the record, whether his waiver was truly "knowing, intelligent, and voluntary." Courts often engage in such colloquia to provide evidence that the waiver, usually effected in writing, is valid. *See* Fed. R. Crim. P. 23(a) (requiring, as a matter of federal procedure in federal courts, only that the waiver be "in writing with the approval of the court and the consent of the government"). *But see* Mich. R. Crim. P. 6.402(B) (requiring, as a matter of state law, a colloquy). Neither such an oral colloquy, nor any other particular form of waiver, is required for a valid waiver as a matter of federal constitutional law. *See Sammons*, 918 F.2d at 597 (rejecting claim that colloquy is required by Sixth Amendment); *Humphries v. Green*, 397 F.2d 67, 69 (6th Cir. 1968) (noting that a written waiver is not required by the federal Constitution). Instead, by querying the defendant regarding his knowledge of the waiver's effect, the colloquy eases the task of reviewing courts in determining whether the waiver was knowingly and voluntarily undertaken for purposes of the Sixth Amendment.

It is in this context that Judge Baxter's discussion with Fitzgerald must be understood. Fitzgerald argues that the colloquy is replete with references to Judge Baxter personally conducting the trial. In particular, Fitzgerald directs us to a portion of that colloquy: