*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0415P (6th Cir.)
File Name: 02a0415p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TIMOTHY JON SPYTMA,
      *Petitioner-Appellant,*

      *v.*

CAROL HOWES,
      *Respondent-Appellee.*

No. 01-1216

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00286—Richard A. Enslen, District Judge.

Argued: August 8, 2002

Decided and Filed: December 4, 2002

Before: MERRITT and DAUGHTREY, Circuit Judges;
WEBER,* District Judge.

_____

**COUNSEL**

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for
Appellant. Janet A. Van Cleve, OFFICE OF THE
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,

_____

*The Honorable Herman J. Weber, United States District Judge for
the Southern District of Ohio, sitting by designation.

Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

––––––––––––––

**OPINION**

––––––––––––––

MERRITT, Circuit Judge. This is an appeal from denial of a habeas petition pursuant to 28 U.S.C. § 2254. Four issues are raised on appeal. The first issue is a procedural question raised by the State with jurisdictional ramifications because the state contends that petitioner's petition is barred by the statute of limitations. The remaining three issues on the merits are raised by petitioner: (1) whether his transfer to adult court was lawful; (2) whether his jury waiver was knowing and intelligent; and (3) whether he received ineffective assistance of counsel.

Petitioner Timothy Spytma was 15 years old in December 1974 when he was charged with the murder of a neighbor. He and a friend, 15-year old Michael Saxton, entered the neighbor's home when she was not there with the intention of burglarizing it. Both juveniles were under the influence of barbiturates at the time. When the neighbor came home and found the young men in her home, they tied her up, beat her with a baseball bat, sexually assaulted her, wrote on her body with ink and eventually slit her wrists. The specific cause of death was determined to be caused by blows to her head inflicted by Michael Saxton.

Petitioner and Saxton were charged with first degree murder. The probate court, which had jurisdiction over juveniles in Michigan at the time, held a joint hearing and decided that both juveniles should be transferred to adult court for trial. Following separate bench trials, they were both convicted and sentenced to life without parole. Petitioner's conviction was affirmed by the Michigan Court

counsel was not aware of the requirements and did err, we do not see how petitioner was prejudiced. If error had been found on appeal and the court had ordered another transfer hearing, it is likely that petitioner again would have been transferred to adult court given the nature of the crime, even if the court had obtained more information on juvenile facilities.

As to the jury waiver issue, counsel's *performance* is subject to a harmless error analysis even though the actual jury waiver issue is arguably not subject to harmless error analysis. Again, it is difficult to see how petitioner was prejudiced by his counsel's failure to raise the jury question on appeal. If the matter had been raised on appeal and petitioner had received a jury trial on remand, it is likely that he would have been found guilty, given the overwhelming evidence of guilt.

For the foregoing reasons, the judgment of the district court is affirmed.

of Appeals without explanation. *People v. Spytma*, No. 31487 (Mich. Ct. App. Feb. 15, 1978). Petitioner was resentenced in 1986 after the Michigan Court of Appeals determined that the breaking and entering of the victim's home was not an enumerated felony for purposes of Michigan's felony-murder statute because it occurred during the day instead of at night. Petitioner was resentenced for second-degree murder and, after the Court of Appeals ordered new psychiatric evaluations of petitioner, he again received a life sentence without parole. *See People v. Spytma*, No. 93377 (Mich Ct. App. Aug. 28, 1987).

In July 1995, petitioner filed a motion for relief from judgment with the Muskegon County Circuit Court raising three constitutional issues: (1) whether his jury waiver was knowing and intelligent; (2) whether the waiver of probate (juvenile) court jurisdiction was valid and (3) whether he had received ineffective assistance of counsel. The circuit court at first summarily denied the motion, but the Michigan Court of Appeals directed the circuit court to hold an evidentiary hearing to collect further evidence on all three issues. An evidentiary hearing was held in April 1996. The circuit court heard testimony on all the issues and again denied relief. The Michigan Court of Appeals affirmed. *People v. Spytma*, No. 188253, 1997 WL 33350487 (Mich. Ct. App. May 9, 1997). The Michigan Supreme Court denied the application for leave to file an appeal. 457 Mich. 858, 581 N.W.2d 731 (1998).

Petitioner filed a habeas petition with the federal court and it was referred to a Magistrate Judge. The Magistrate Judge held a hearing and heard from the attorneys but did not take any new evidence. The Magistrate Judge issued a Report and Recommendation that recommended granting conditional habeas relief because petitioner's jury waiver was not knowingly and intelligently given. He did not recommend relief on the other issues. Both parties objected to the Report and Recommendation. The district court adopted the Magistrate's Report and Recommendation as to the transfer to adult court and the ineffective assistance of counsel issues. The district court did not adopt the Magistrate Judge's

recommendation on the jury waiver issue, instead finding that the waiver was knowingly and intelligently given. *Spytma v. Howes*, No. 1:99-CV-286 (W.D. Mich. Jan. 9, 2001). This appeal followed.

### Statute of Limitations

The State claims that petitioner's habeas petition is barred by the one-year statute of limitations under 28 U.S.C. § 2244(d)(1).[1] The State arrives at this position by arguing

---

[1] The section in question states:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

findings in favor of petitioner. Petitioner has presented no evidence other than his own testimony at the 1996 hearing that would allow us to overcome the presumption of accuracy accorded the contemporaneously-made record. As such, the state court's finding, after conducting an evidentiary hearing into the matter, of a valid jury waiver was not rebutted by "clear and convincing" evidence, as required in order to obtain habeas relief. *See Rickman v. Bell*, 131 F.3d 1150, 1153-54 (6th Cir. 1997).

Therefore, although the Magistrate Judge found that the waiver was not knowingly and intelligently given and recommended a conditional grant of the writ on this basis, the district court properly rejected this recommendation, finding that the Magistrate Judge did not give sufficient deference to the state court findings concerning the jury waiver issue and instead substituted his judgment for that of the state courts. In the absence of contemporaneous evidence outside of the written waiver showing that the waiver was knowing and intelligent, we must give presumptive force to that written document. In addition, the existence of a factual dispute between the state court trial log and petitioner's 1996 hearing testimony concerning the Michigan procedural rule requiring that the waiver be signed in open court does not invalidate the waiver on constitutional grounds. While the trial court failed to conduct an on-the-record colloquy, such a colloquy is not required and the record does not disclose any evidence that petitioner was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand.

### Ineffective Assistance of Counsel

Petitioner claims that his attorney rendered ineffective assistance of counsel because (1) he failed to appeal the waiver of juvenile court jurisdiction and (2) he failed to appeal the invalid jury waiver.

As to the transfer to adult court, petitioner claims that his attorney was unaware that the probate court was required to elicit information concerning the availability of programs and adult facilities at the transfer hearing. Even assuming that

There is no dispute here that petitioner voluntarily signed a jury waiver form on April 2, 1975. However, there is little evidence in the record from that time about the circumstances surrounding the signing of the waiver other than the signed form. There was no on-the-record colloquy between the judge and the petitioner. The court log for April 2, 1975, states that the waiver was approved and signed in open court. Petitioner's attorney has no independent recollection of discussing the waiver with the petitioner, although he testified at the evidentiary hearing in the Michigan state court in 1996 that given the brutal nature of the crime he would probably have advised petitioner to sign the waiver. Petitioner testified at the same hearing in 1996 that he did not understand his right to a jury trial at the time and simply did what his attorney told him to do. He testified that he signed the waiver in jail and was never asked about it in court, despite the existence of a court log that states that it was approved and signed in open court. Petitioner's mother, the only other adult with knowledge of the circumstances surrounding the jury waiver, died before the 1996 evidentiary hearing.

Because petitioner does not dispute that the waiver was voluntary, the real question here is whether there is sufficient indicia that petitioner understood the nature of his right to trial by jury. Petitioner was represented by counsel and concedes that he signed the waiver document. Compliance with the writing requirement in Federal Rule of Criminal Procedure 23(a) creates a presumption that the waiver is voluntary, knowing and intelligent. *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990). The court log indicates it was done in "open court."

We are required to give a high measure of deference to the state court's findings concerning the jury waiver, which are supported by the contemporaneous record in the case. While we have concerns about whether the then-15-year-old petitioner's jury waiver was knowingly and intelligently given, we are unable, on the basis of the bare record, and given the passage of time, to resolve the conflicts between petitioner's testimony at the 1996 hearing and the state court

that the time during which petitioner's post-conviction claims were pending in state court counts against the one-year time limitation for bringing a habeas petition. In other words, the State contends that there is no tolling of the one-year period during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review of a petitioner's claims.

The State acknowledges that the statute of limitations is tolled when a "properly filed application for State post-conviction or other collateral review . . . is pending." § 2244(d)(2). However, the State goes on to argue that the moment a state court rules on an application for collateral review, it is no longer "pending" and the statute of limitations is not tolled during the intervals between state court proceedings. Specifically, the State maintains in this case that the statute was not tolled from May 9, 1997, when the Michigan Court of Appeals affirmed the trial court's decision to deny petitioner's motion for relief from judgment, to June 23, 1997, the date on which petitioner properly and timely filed a delayed application for leave to file with the Michigan Supreme Court. The State argues that when that 45-day period is combined with the period between April 28, 1998, the date on which the Michigan Supreme Court denied leave to appeal, and April 15, 1999, the date on which petitioner filed his petition for habeas corpus, the petitioner's petition violates the one-year statute of limitations in 28 U.S.C. § 2244(d)(1).

The statutory language of 28 U.S.C. § 2244 is ambiguous as to whether the one-year limitations period should be tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review of a petitioner's claims. The Supreme Court, however, recently clarified this issue, holding, as had every circuit court that had addressed the issue, that a petitioner's claim is "pending" for the entire term of state court review, including those intervals between one state court's judgment and the filing of an appeal with a higher state court. *Carey v. Saffold*, 122 S. Ct. 2134, 2138 (2002). *Accord Abela v. Martin*, No.

00-2430, 2002 WL 31422293 at*7 (6th Cir. Oct. 30, 2002). Because petitioner timely filed his application and appeals on collateral review in the state courts, he falls within the one-year statute of limitations under § 2244(d)(1).

### Waiver of Juvenile Court Jurisdiction

In December 1974, Michigan law required that the probate court, which served as the juvenile court in Michigan at the time, hold a hearing to decide whether a juvenile defendant should be tried as an adult. M.C.L. § 712A; M.S.A. § 27.3178.[2] Petitioner claims that the waiver of jurisdiction by the probate court violated his constitutional due process rights because the probate court neglected to make sufficient factual findings as required by state law.

In *Kent v. United States*, 383 U.S. 541 (1966), the Supreme Court recognized that a hearing to determine whether a juvenile should be tried as an adult was a "critically important" stage and therefore the proceedings "must measure up to the essentials of due process and fair treatment." *Id.* at 562. The Court went on to state, however, that it did not mean by this "to indicate that the hearing to be held must conform with all the requirements of a criminal trial or even of the usual administrative hearing . . . ." and the Court has never tried "to prescribe criteria for, or the nature and quantum of, evidence that must support" a decision to transfer a juvenile to adult court. *Id.* So while the Court made it clear that juveniles are entitled to some minimal level of procedural safeguards, such as legal representation and development of a reviewable record, the Court did not specify the exact nature of the constitutional requirements of due

---

[2]In 1989, the law concerning juveniles changed in Michigan to state that when a juvenile 14 years or older commits certain crimes, including murder, jurisdiction over the juvenile by the probate court is waived without a hearing, and the juvenile is automatically transferred to adult court at the prosecutor's discretion. M.C.L. § 764.1f(1); M.S.A. § 28.860(6)(1).

transfer statute because the probate judge was aware of all the factors, but just did not articulate them. The state court also concluded that any error was harmless because no reasonable probate judge would have failed to waive jurisdiction given the brutality of the crime. Trans. of Evid. Hearing at 155, Apr. 30, 1995.

### Jury Waiver

Petitioner's second claim is that his jury trial waiver was not knowing and intelligent. Because the right to a jury trial is a fundamental right, there must be no doubt that any waiver of the right is made knowingly, intelligently and voluntarily. *United States v. Martin*, 704 F.2d 267, 272 (6th Cir. 1983). Whether there is an "intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." *Id.* In *Martin*, we held that a defendant may waive a jury trial if (1) the waiver is in writing, (2) the government attorney consents to the waiver, (3) the trial court consents to the waiver and (4) the defendant's waiver is voluntary, knowing and intelligent. For a waiver to be voluntary, knowing and intelligent, the defendant must possess a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of waiver of that right. A defendant is deemed to be "sufficiently informed to make an intelligent waiver if he is aware that a jury is composed of 12 members of the community, [knows] he may participate in the selection of jurors [and that] the verdict of the jury must be unanimous, and that the judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273. "[T]echnical knowledge" of the jury trial right is not required for waiver to be effective. *Id.* In addition, Michigan law at the time of petitioner's arrest required that the waiver be executed "in open court" after defendant has been arraigned and has had an opportunity to consult with counsel. M.C.L. § 763.3; M.S.A. § 28.856. Although recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver. *Martin*, 704 F.2d at 273.

*solely* on the severity of a single crime may be unwise, but it is not unconstitutional when done in accordance with a valid transfer statute . . . ." *Deel*, 967 F.2d at 1090 (emphasis in original).

As in *Deel*, and as recognized by the courts that have reviewed it, the hearing held in this case is "open to serious criticism." But our concern today is whether petitioner received due process as required by *Kent*, not whether the state court meticulously complied with Juvenile Rule 11.1. We find that minimum due process requirements were met. Petitioner was represented by counsel and a hearing was held on the record. Whether the Michigan court's waiver of jurisdiction and transfer to adult court contain sufficient indicia under state law is a question for the Michigan courts, which have held that it was valid. Accordingly, despite the lack of specific findings on the record concerning the listed criteria, we cannot say that the judge did not consider all the criteria before making his decision or that the hearing did not comport with minimum due process.

In addition, as determined by the previous courts that have examined the issue, despite the lack of a reviewable record, any error in the transfer proceeding is subject to harmless error analysis. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993); *Crick v. Smith*, 729 F.2d 1038, 1039 (6th Cir. 1984); *Crick v. Smith*, 650 F.2d 860, 868 (6th Cir. 1981). Although the judge failed fully to consider on the record the waiver criteria established under Michigan law, it is likely that any "reasonable" probate judge would have transferred petitioner to adult court. As concluded by the Magistrate Judge, there is "perhaps a legitimate question" as to whether the probate court satisfactorily complied with the state juvenile transfer statute for federal constitutional purposes, but any error was harmless given the circumstances because no "reasonable' judge would have denied the transfer. In addition, the state trial court concluded after the 1996 evidentiary hearing that the "probate judge did not comply with the statute." Trans. of Evid. Hearing at 153, Apr. 30, 1996. The court concluded, however, that there was "substantial compliance" with the

process at a juvenile transfer hearing. *Oviedo v. Jago*, 809 F.2d 326, 327 (6th Cir. 1987).

At the time of petitioner's arrest, Michigan had procedures in place to follow when conducting a juvenile transfer hearing. *See* Juvenile Court Rules of 1969, Rules 11.1 & 11.6; *People v. White*, 51 Mich. App. 1, 4, 214 N.W.2d 326 (1973); *People v. Jackson*, 46 Mich. App. 764, 769, 208 N.W.2d 526, 530 (1973). Rule 11.1 set out a two-step process whereby the court first determined whether there was probable cause to believe that the child committed a felony offense, and then went on

to determine whether or not the interests of the child and the public would be best served by granting a waiver of jurisdiction to the criminal [adult] court. In making the determination, the court shall consider the following criteria:

(a) The prior record and character of the child, his physical and mental maturity and his pattern of living;

(b) The seriousness of the offense;

(c) Whether the offense, even if less serious, is part of a repetitive pattern of offenses which would lead to a determination that the child may be beyond rehabilitation under existing juvenile programs and statutory procedures;

(d) The relative suitability of programs and facilities available to the juvenile and criminal courts for the child; and

(e) Whether it is in the best interests of the public welfare and the protection of the public security that the child stand trial as an adult offender.

M.C.L. § 712A; M.S.A. § 27.3178. *See People v. Dunbar*, 423 Mich. 380, 377 N.W.2d 262 (1985). Rule 11.1 required the judge fully to investigate the five criteria. Rule 11.6 also

required the court to include written findings in support of its waiver order.

The transfer hearing focused primarily on establishing probable cause that petitioner and Saxton had committed the murder. The second part of the transfer hearing was intended to "determine whether or not the interests of the child and the public would be best served by granting a waiver of jurisdiction to the criminal [adult] court." M.C.L. § 712A; M.S.A. § 27.3178. Only four pages of a 61-page transcript addressed whether the interests of the child and the community would best be served by a transfer, and the focus of this part of the hearing was on the seriousness of the crime. No witnesses were presented. It appears from the transcript that the judge may have had some psychological information concerning petitioner before him, but that is not clear.[3] The judge also criticized the state legislature for decreasing judicial discretion in some juvenile cases and then recited some anecdotal evidence about an unrelated criminal case involving another juvenile transfer. He then made a passing reference to a couple of juvenile programs that he thought were not appropriate for Spytma and Saxton due to the seriousness of the crime. He then made his decision by stating, "As far as I can see here and have heard here this morning, and have read the medical report, there is nothing the Juvenile Court can do which will satisfy the boys involved or the community in general, we have no facilities and they are therefore bound over to the Circuit Court." Trans. of Waiver Hearing, Dec. 27, 1974 at p. 66.

The probate judge did not make specific findings on each of the listed criteria in Rule 11.1 as required by the Juvenile Court Rules. For example, no one, including petitioner's

---

[3] Petitioner's presentence investigation report stated that only one week before the murder, on December 10, 1974, petitioner underwent a psychological examination while staying in a Youth Home. The report noted that he had an IQ of 99, might be psychotic or schizophrenic, and while withdrawn, was not violent. Presentence Investigation Report, dated Sept. 26, 1975.

mother, testified about his home life or his education, including the fact that he was not a good student, there was no testimony explaining that he had finished only the eighth grade, nor was there any testimony concerning the fact that his mother had been divorced three times. In addition, the judge did not make the required finding as to the "relative suitability of available programs and facilities" except to state that he could not think of any that were appropriate. At the evidentiary hearing held by the state court in 1996, the former director of the Institutional Services Division of the Michigan Department of Social Services gave an opinion that in 1975 Michigan had juvenile correction facilities available for juveniles who had committed first-degree murder and had programs available for those juveniles. It is unclear from the hearing transcript how much he knew about other programs for juveniles accused of serious crimes and/or those with serious drug abuse problems. In addition, petitioner's prior crimes were for theft, larceny and being a runaway -- none involved violence. While the judge did have had some written material containing some or all of this information, he did not make detailed findings on the record about how he used the information to reach his decision.

The question is whether, under the circumstances of this case, the failure to make all the required findings under state law on the record violated petitioner's constitutional due process rights. Our analysis here is guided by *Deel v. Jago*, 967 F.2d 1079 (6th Cir. 1992). Like the petitioner in this case, the juvenile in *Deel* was also 15, near the bottom of the age range eligible for transfer. Like petitioner, Deel was also accused of murder. Despite finding that a wide range of treatment options existed for juveniles accused of violent crimes in Ohio, the juvenile court declared Deel not amenable to rehabilitation and transferred him to adult court. As did the juvenile court herein, the judge in *Deel* focused almost exclusively on the seriousness of the crime in reaching its decision to transfer. *Deel* noted that while the juvenile court's transfer decision was "open to serious criticism," the court set out the relevant facts and explained the basis for its decision. The opinion concluded that to "treat a child as an adult based