NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0520n.06

No. 09-1895

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 17, 2010**

LEONARD GREEN, Clerk

CHRISTOPHER JOHNSON,                    )
                                        )        ON APPEAL FROM THE
        Petitioner-Appellee,            )        UNITED STATES DISTRICT
                                        )        COURT FOR THE EASTERN
v.                                      )        DISTRICT OF MICHIGAN
                                        )
HUGH WOLFENBARGER,                      )        O P I N I O N
                                        )
        Respondent-Appellant.           )

BEFORE:     COLE and McKEAGUE, Circuit Judges; and MAYS, District Judge.*

        **McKEAGUE, Circuit Judge.** Defendant Christopher Johnson was convicted of four counts

of first-degree criminal sexual conduct following a bench trial in Wayne County Circuit Court.

Johnson had waived his right to a jury trial after he was bound over on four counts of third-degree

criminal sexual conduct. Subsequently, Johnson's information was amended and the original

charges of first-degree criminal sexual conduct were reinstated. Several weeks passed after the first-

degree charges were reinstated, but Johnson did not seek to withdraw his waiver of jury trial. Nor

did he object to the ensuing bench trial—until after he was found guilty and sentenced to four

concurrent prison terms of eighteen to fifty years. The conviction was affirmed on appeal.

_____

        *Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of
Tennessee, sitting by designation.

In habeas, the district court concluded that Johnson did not effectively waive his right to a jury trial on the first-degree charges and is entitled to a new trial. Warden Hugh Wolfenbarger argues on appeal that Johnson's claim is procedurally defaulted, and that Johnson has failed to show cause and prejudice excusing his default. Further, the Warden contends, even if the court reaches the merits of petitioner's claim, habeas relief is inappropriate because the Michigan Court of Appeals' affirmance of the conviction has not been shown to be an unreasonable application of clearly established federal law. The Warden is right in both respects. The district court's ruling will therefore be reversed.

**I**

The facts established by the trial proofs, which are not in dispute for present purposes, are summarized in the Michigan Court of Appeals' opinion. *People v. Johnson*, 2005 WL 602543 at *1 (Mich. Ct. App. 2005). The details need not be reiterated. In short, defendant Johnson was shown to have used force and threats of force during a two-day episode in October 2003 as he repeatedly brutalized the woman with whom he was then cohabiting. Johnson was initially charged with six counts of first-degree criminal sexual conduct in state court. Following a preliminary examination, the state district court dismissed two of the counts and reduced the remaining charges to third-degree criminal sexual conduct. Johnson was bound over on these charges and an amended information was filed on November 5, 2003, to reflect the third-degree charges.

At a November 14, 2003 docketing conference, Johnson waived his right to a jury trial and asked that all pre-trial motions be decided by an alternate judge. The court granted Johnson's request for referral of all pre-trial motions to an alternate judge. The court also questioned Johnson under

oath and ascertained that he understood his right to a jury trial and that he was not promised any

special result or verdict in exchange for giving up his right to a jury trial. R. 9, ex. 3, docketing conf.

tr. pp. 4-5. Johnson signed a written waiver. *Id.* Subsequently, the alternate judge heard and granted

the prosecution's motion to amend the information so as to reinstate the original charges of first-

degree criminal sexual conduct. A second amended information was prepared to reflect the

reinstated charges.

Three weeks passed before the ensuing trial. At no time did Johnson seek to withdraw his

jury trial waiver. The state court failed to elicit from Johnson an express acknowledgment that his

jury trial waiver extended to the first-degree charges. Yet, Johnson did not assert his right to a jury

trial and stated no objection to proceeding with the bench trial. Johnson was convicted of four

counts of first-degree criminal sexual conduct under M.C.L. § 750.520b(1)(f) and sentenced to four

consecutive terms of eighteen to fifty years' imprisonment.

Johnson appealed, challenging for the first time the validity of his jury trial waiver. *Johnson*,

2005 WL 602543 at *4. Specifically, Johnson contended that his conviction must be reversed

because his jury trial waiver did not extend to the first-degree charges. The Michigan Court of

Appeals reviewed this claim for plain error, because no objection had been asserted in the trial court.

The court found that Johnson was aware of the allegations against him at all times and held that his

waiver was valid. The court held that because Johnson neither moved to withdraw his waiver nor

objected to the bench trial, no plain error occurred. Further, the court observed that Johnson had not

carried his burden of showing prejudice resulting from any error and had not shown that the fairness,

integrity or public reputation of the proceedings had been adversely affected. *Id.* at \*4-5. The Michigan Supreme Court denied leave to appeal.

Johnson filed a petition for writ of habeas corpus in the Eastern District of Michigan. The district court concluded that Johnson's claim was procedurally defaulted, but nonetheless granted the petition. The district court held that the Michigan Court of Appeals' holding that Johnson had effectively waived his right to a jury trial on the first-degree charges contained in the second amended information represented an unreasonable application of clearly established federal law. The Warden challenges these conclusions, contending that the district court improperly merged the procedural default cause-and-prejudice analysis with the merits of the case; that Johnson did not demonstrate cause for his failure to object to the bench trial; and that Johnson's jury trial waiver effectively applied, in view of his non-objection, to the reinstated first-degree charges.

**II**

We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). Johnson's habeas petition is evaluated under the limited standard of review prescribed in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). *See Fleming* 556 F.3d at 524. Under AEDPA, a federal court may not grant habeas relief from a state conviction unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court adjudication is contrary to clearly established federal law if it arrives at a conclusion opposite to that of the Supreme Court on a question of law or decides a case differently

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Alternatively, an unreasonable application of Supreme Court precedent occurs if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A state-court adjudication must be objectively unreasonable to warrant relief; it is not sufficient that the reviewing court finds the state court's decision erroneous or incorrect. *Id.* at 520-21.

### A. Procedural Default

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). Such a "procedural default" occurs when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

The district court correctly determined that Johnson's claim was procedurally defaulted by virtue of his having failed to object to the bench trial in the trial court, which failure resulted in

appellate review only under the more restrictive "plain error" standard of review. *See Johnson*, 2005 WL 602543 at *3. It is now well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *See Fleming*, 556 F.3d at 530.

Yet, the district court side-stepped the cause-and-prejudice requirement, observing simply and without authority that the analysis "merged" with the analysis of the merits of the case. This decision to ignore the cause-and-prejudice requirement is directly contrary to controlling precedent. It is well-established that either cause and prejudice or actual innocence must be established in order to excuse procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Murphy v. Ohio*, 551 F.3d 485, 501-02 (6th Cir. 2009); *Haylim v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007). The district court's disregard of the cause-and-prejudice requirement was in error, for it is abundantly clear that Johnson has shown neither cause nor prejudice to excuse his procedural default.

In order to establish "cause," a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Haylim*, 492 F.3d at 690-91 (quoting *Murray*, 477 U.S. at 488). "Prejudice," meanwhile, "requires a showing that errors at trial 'worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Haylim*, 492 F.3d at 690-91 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)).

Johnson has not established cause because he has not shown that any objective factor external to the defense impeded him from withdrawing his waiver or objecting to the bench trial. Johnson

addresses the issue of cause only summarily, alleging that the prosecution deliberately and deceptively waited until he had waived his right to a jury trial before moving to reinstate the first-degree charges. Yet, Johnson had several weeks between the time the first-degree charges were reinstated and the trial began. He chose not to withdraw the waiver and the record is devoid of evidence suggesting that he was prevented from withdrawing his waiver. Johnson's bald allegation that the prosecution deliberately and deceptively waited until after he entered his waiver before moving to reinstate the first-degree charges is to no avail. Even if true, the prosecution's "ploy" had no effect on Johnson's ample opportunity to withdraw his waiver—an opportunity he simply failed to use. Clearly, Johnson has fallen far short of showing cause excusing his procedural default.

Because Johnson has not established cause, the court need not address the issue of prejudice. *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Yet, even if Johnson had established cause, his showing of prejudice would fall short. Johnson contends he was prejudiced in that he was denied his constitutional right to a jury trial. However, the record affords no support for the notion that he was *denied* anything; only that he freely and knowingly decided to waive his right to a jury trial. Johnson took the affirmative step of executing a signed waiver. The state court confirmed on the record that he did so voluntarily and knowingly.

A waiver is the intentional relinquishment of a known right. *See United States v. Olano*, 507 U.S. 725, 733 (1993). Johnson acknowledges that his written waiver was valid when executed, i.e., when he was facing the third-degree charges. This written waiver, as the district court recognized, gives rise to a presumption that Johnson's jury trial waiver was voluntary, knowing and intelligent. *Spytma v. Howes*, 313 F.3d 363, 371 (6th Cir. 2002). Johnson insists, however, that it was not

effective to waive his right to jury trial on the subsequently reinstated first-degree charges. In view of this change of circumstances, Johnson contends the trial court had a *sua sponte* duty to make inquiry and confirm that he intended to waive jury on the reinstated charges. Johnson cites no authority for this proposition.[1] In fact, the notion that the trial court had a *sua sponte* duty to confirm that Johnson still wished to abide by the jury waiver—that he, with advice of counsel, had requested weeks earlier—runs directly contrary to the teaching of *Adams v. United States*, 317 U.S. 269, 281 (1942). In *Adams*, the Court placed squarely on the shoulders of the one challenging his jury trial waiver the burden of "plainly showing" that the waiver was "not freely and intelligently made" and that he sustained "essential unfairness"—"not as matter of speculation but as a demonstrable reality." *Id.*; *see also Filiaggi v. Bagley*, 445 F.3d 851, 855 (6th Cir. 2006); *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004).

Johnson has not carried this burden. There is no evidence suggesting other than that he intended his jury trial waiver to apply to the reinstated first-degree charges. There is no evidence that Johnson sought or even desired to withdraw his waiver and yet was denied such relief. Johnson has not identified in the record even an inkling of an objection to the bench trial that ensued. Because the record shows that Johnson acted affirmatively and intentionally to waive his right to a jury trial and expressed no desire or intent to revoke or withdraw the waiver after the charges were amended, the record affords no support for the conclusion that he was *denied* any right; only that he voluntarily

---

[1]The Michigan Court of Appeals rejected this argument, observing that Michigan law does not "require the trial court to reopen the inquiry of a valid jury waiver based on subsequent developments in the case," but does allow a defendant to move to withdraw a valid waiver. *People v. Johnson*, 2005 WL 602543 at *5.

relinquished it. Johnson has not shown that the trial court's failure to expressly confirm his continuing intent to waive jury "infected his entire trial with error of constitutional dimensions." *See Haylim*, 492 F.3d at 690-91. He has not therefore shown the requisite prejudice to excuse his procedural default.

Finally, Johnson's procedural default is not excused because he has not established, nor even claimed, actual innocence. Even where cause and prejudice are not established, procedural default may be excused if a fundamental miscarriage of justice would otherwise result. *See Schlup*, 513 U.S. at 315-16. In order to demonstrate a fundamental miscarriage of justice, a federal habeas petitioner must present reliable new evidence of actual innocence so strong that the court cannot have confidence in the outcome of the trial. *Id.* Johnson does not claim actual innocence, nor does he contend that any new evidence warrants a reversal of his conviction.

It follows that Johnson's procedural default effectively bars federal court review of the merits of his claim in habeas. Hence, the habeas petition should have been denied. The district court's contrary conclusion is erroneous and must be reversed.

**B. Merits**

The district court concluded that even though Johnson's claim was procedurally defaulted, he is entitled to habeas relief. The court concluded that Johnson's jury trial waiver was not valid as to the reinstated first-degree charges because there was no indication that he expressly waived his right in relation to the more serious first-degree charges. Also, the district court found that the waiver did not apply to the first-degree charges because third-degree charges and first-degree charges carry different penalties and have different elements. As such, the district court found that Johnson's

waiver was not "voluntary, knowing, and intelligent," as required by *Lott v. Coyle*, 261 F.3d 594,

615 (6th Cir. 2001).

*Lott* sets forth the standard defining the level of "knowledge" a defendant must have to

validly waive his right to a jury trial:

> A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. *See* [*United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983)]. Although a defendant need not have a detailed, technical knowledge of this right, "[a] defendant is [deemed] sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, [that] he may participate in the selection of the jurors, [that] the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273. We did not, however, adopt a mandatory rule requiring trial courts to interrogate defendants prior to accepting a jury trial waiver, but instead, offered a "suggestion" that district courts personally inform defendants of the "benefits and burdens of jury trials on the record prior to accepting a proffered waiver." *Id.* at 274.

*Lott*, 261 F.3d at 615. Thus, a defendant need not have a "detailed, technical knowledge" before he

can validly waive his right to a jury trial. Instead, he only needs to understand the "implications" of

his waiver as well as the "benefits and burdens" of choosing a bench trial over a jury trial.

Johnson's waiver meets this standard—even in relation to the first-degree charges. First, as

indicated above, Johnson's signed written waiver is presumptively valid. *Spytma*, 313 F.3d at 371.

Johnson attempts to rebut this presumption based on the reinstatement of the first degree charges.

Yet, Johnson was aware of the nature of the first-degree charges at the time they were reinstated

because he was initially charged with first-degree criminal sexual conduct. There was no surprise;

Johnson had known of the severity of the first-degree charges from the outset. Indeed, the first-

degree charges were based on the very same allegations as the third-degree charges. In other words,

there is no manifest reason why the reinstatement of the original charges should be deemed to have altered the calculus behind Johnson's earlier decision to waive his right to a jury trial.[2] That he did not seek to withdraw his waiver and did not object to the ensuing bench trial was the natural, expected course of events. The mere fact that the trial court neglected to confirm that Johnson still intended his earlier signed waiver to apply to the reinstated charges does not suggest that he was "denied" his right to withdraw it where the record establishes only that he understood his waiver and knowingly refrained from withdrawing it.

Second, while the trial court never questioned Johnson about his intention to waive his right to a jury trial after the first-degree charges were reinstated, Johnson appears to have known how the waiver worked as well as the implications of choosing a bench trial over a jury trial. The record is devoid of any indication that Johnson ever sought to question his waiver or withdraw it after the original, first-degree charges were reinstated. Johnson had three weeks in which to reconsider and withdraw his waiver, but he instead chose to go forward with the bench trial. If he understood the implications of opting for a bench trial in relation to the third-degree charges, he surely understood those same implications in relation to the first-degree charges.

Still, the district court concluded that the intervention of the reinstated first-degree charges invalidated his earlier waiver. The court deemed Johnson's situation comparable to cases where a defendant's jury trial waiver was held not to extend to a retrial because a waiver does not necessarily

---

[2]The facts in this case are sexually explicit and offensive. It is likely that Johnson preferred not to have such facts presented to and judged by a jury he reasonably apprehended would not be sympathetic with his legal defense.

remain valid irrespective of later developments. *See, e.g.*, *United States v. Groth*, 682 F.2d 578 (6th Cir. 1982). The district court also compared Johnson's situation to cases where a defendant waived his right to a jury trial before a particular judge, and later sought to withdraw that waiver when a different judge was assigned to the case. *See Fitzgerald v. Withrow*, 292 F.3d 500, 505 (6th Cir. 2002); *Sinistaj v. Burt*, 860 F.Supp. 1209, 1215 (E.D. Mich. 1994), *rev'd*, 66 F.3d 804 (6th Cir. 1995). The district court emphasized that although a defendant "is not entitled to make a limited or conditional waiver of his right to a jury trial," he "retains any portion of the jury trial right that he has not validly waived." Opinion p. 12 (quoting *Fitzgerald*, 292 F.3d at 503). Hence, the district court reasoned that the reinstated first-degree charges, not in place when Johnson executed his waiver, represented an intervening change in circumstances not within the contemplation of the waiver, rendering the waiver not "voluntary, knowing, and intelligent" in relation to the charges on which Johnson ultimately went to trial.

Indeed, a defendant is generally entitled to withdraw or revoke his waiver of a jury trial upon a showing that the waiver was not freely and intelligently made. *Adams*, 317 U.S. at 281; *Filiaggi*, 445 F.3d at 855. If the circumstances under which Johnson initially executed his waiver materially changed, then a question would arise as to whether he "voluntarily, knowingly and intelligently" wished to maintain or withdraw the waiver. Yet, despite having ample opportunity to do so, there is no evidence that Johnson ever *questioned* the wisdom of his waiver, much less that he sought to withdraw it. The cases relied on by the district court are in this respect readily distinguishable from the instant case.

In *Groth*, for instance, the Sixth Circuit held that the waiver of a jury trial did not bar a *demand* for a jury trial on retrial of the same case when the original waiver did not explicitly contemplate a retrial. *Groth*, 682 F.2d at 580. Here in contrast, Johnson never sought to withdraw his waiver prior to trial, never objected to the bench trial, and never demanded a jury trial. If Johnson had sought to withdraw his jury trial waiver before trial began, he may very well have been entitled to do so. Because he did not, *Groth* is inapposite.

Similarly, the district court's reliance on *Fitzgerald* is misplaced. In *Fitzgerald*, the Sixth Circuit reversed the district court's award of habeas relief and enforced the broad terms of the defendant's written waiver—despite some evidence suggesting that the defendant wished to waive his right to a jury trial only in order to consent to a bench trial before the then assigned judge. When a different judge was assigned to conduct the trial at the last minute, the defendant's request to withdraw his waiver was denied. The Sixth Circuit upheld this denial as not violative of the defendant's right because the written waiver was not expressly limited to a particular judge even though the defendant's conduct evidenced his knowledge that substitution of a different judge was a possibility. *Fitzgerald*, 292 F.3d at 504-05.

In comparison, Johnson's case is even weaker because his written waiver appears to have been no less broad and he did not even move to withdraw his waiver, indicating that he understood his waiver applied to the reinstated first-degree charges and did not object.[3] Despite having several

---

[3]Johnson's actual signed written waiver, referred to on the record in the November 14, 2003 docketing conference, has not been made part of the habeas record. Nor has either party quoted the terms of the written waiver. Johnson has not argued, however, and the record gives no reason to believe that the waiver was tied specifically and exclusively to the then-pending charges against him.

weeks to withdraw his waiver, Johnson maintained his decision to proceed with a bench trial.

Johnson's conduct tends to show he was fully aware of the implications of his decision and made

a strategic choice not to withdraw his waiver. Here, too, as in *Fitzgerald*, Johnson did not "retain"

any portion of his right to a jury trial once he waived it. Johnson did not evidence an intent to limit

his waiver to any particular charges—either in the writing itself or in his actions. Nothing in

*Fitzgerald* suggests that Johnson's written waiver should be construed as limited or conditional. In

fact, inasmuch as the *Fitzgerald* court reversed the district court's award of habeas relief, the

*Fitzgerald* opinion actually affords stronger support for the Warden's position than Johnson's.

The district court's reliance on *Sinistaj* is also misplaced. The ruling of the district court in

*Sinistaj* was expressly overturned by the Sixth Circuit on the very point for which the district court

relied on it, i.e., the holding that a defendant who waives his right to a jury trial is later entitled to

withdraw that waiver if his case is assigned to a different judge. *See Sinsitaj*, 860 F. Supp. at 1215.

The Sixth Circuit expressly held that this change in circumstances is not something that warrants

allowing a defendant to withdraw his jury trial waiver. *See Sinistaj*, 66 F.3d at 808-09. Again, as

in *Fitzgerald*, the *Sinstaj* court upheld the broad terms of defendant's written waiver and reversed

the district court's grant of habeas relief. And again, as with *Fitzgerald*, the Sixth Circuit's *Sinstaj*

ruling clearly lends greater support to the Warden's position than Johnson's.

Finally, the district court held that Johnson's waiver was invalid as to the first-degree charges

because the reinstated charges required proof of different elements and carried the possibility of

harsher penalties than the third-degree charges. Specifically, the district court concluded that in order

for Johnson's waiver to be valid, he should have been apprised of the evidence that would be used

against him; otherwise, Johnson's waiver was not informed enough to be "knowing and intelligent." In support, the district court relied on *Brown v. Burns*, 996 F.2d 219, 221 (9th Cir. 1993).

This analysis is flawed for two reasons. First, as the Warden points out, the use of force to accomplish sexual penetration is an essential element of both first and third degree criminal sexual conduct charges under Michigan law.[4] It is the amount of force used and whether it resulted in personal injury that distinguishes the offenses. Johnson was aware of the elements of the crimes at issue and knew that both the first- and third-degree charges were based on the identical factual allegations and would be prosecuted based on the very same evidence. The circumstances that Johnson faced when the original charges were reinstated were not new to him. The intervention of the reinstated charges is not such a material change of circumstances as would tend to undermine the validity of Johnson's waiver. This fact, coupled with Johnson's failure to withdraw his waiver or express any objection to the bench trial, supports the conclusion that Johnson continued to desire to waive his right to a jury trial on the first-degree charges.

The second flaw in the court's reasoning is that *Brown* involved a defendant who was confused about the difference between a jury trial and a bench trial. *See Brown*, 996 F.2d at 219. The record is devoid of any indication that Johnson was ever confused in this way. *Brown* is thus inapposite, because there is no question that Johnson understood his right to a jury trial as well as

---

[4] *See* M.C.L. § 750.520b(1)(f). A person is guilty of first-degree criminal sexual conduct if "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration." *See also* M.C.L. § 750.520d(1)(b). A person is guilty of third-degree criminal sexual conduct if "[f]orce or coercion is used to accomplish the sexual penetration. Force or coercion includes, but is not limited to any of the circumstances listed in section 520b(1)(f) . . ."

the implications of choosing a bench trial. *See Johnson*, 2005 WL 602543 at \*4. Johnson has not identified any reason to conclude other than that he had the requisite knowledge and that his decision to waive jury trial was "voluntary, intelligent, and knowing," even as applied to the first-degree charges. The courts are not obliged to save defendants from their own strategic choices that later prove to be unfortunate. *See Fitzgerald*, 292 F.3d at 505.

In summary, the case law on which the district court relied having been distinguished, its conclusion that the Michigan Court of Appeals' ruling was an unreasonable application of clearly established federal law is left unsupported. Johnson has not carried his burden of "plainly showing" that his jury trial waiver was "not freely and intelligently made" and that he, as a matter of "demonstrable reality," sustained "essential unfairness." *Adams*, 317 U.S. at 281. Accordingly, even if we were to reach the merits of Johnson's claim, despite his procedural default, it is clear that habeas relief would be denied and the district court's ruling would be reversed.

**IV**

Based on the foregoing reasoning, we conclude that habeas relief must be denied because the claim asserted was procedurally defaulted. Even if we were to address the merits, notwithstanding Johnson's procedural default, the claim would be denied because the Michigan Court of Appeals' ruling has not been shown to be contrary to or an unreasonable application of clearly established federal law. Accordingly, the district court's order granting habeas relief is **REVERSED**. The case is **REMANDED** to the district court for entry of an order denying the petition for writ of habeas corpus.