

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0441-21

### SAUL RANULFO HERRERA RIOS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

HERVEY, J., delivered the opinion of the Court in which RICHARDSON, YEARY, NEWELL, WALKER, MCCLURE, JJ., joined. KEEL, J., concurred. KELLER, P.J., filed a dissenting opinion. SLAUGHTER, J., dissented.

### **O P I N I O N**

Appellant, Saul Ranulfo Herrera Rios, was convicted of continuous sexual abuse of a child. He appealed, arguing that he did not waive his federal constitutional right to a jury trial[1] and that the state statutory procedures for waiving a jury were not followed.

---

[1] Defendants have the right to a jury under the Sixth Amendment, under the Texas Constitution, and by statute. U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. art. 1.12. This case is only about the Sixth Amendment right to a jury trial and waiving that right under Article 1.13 of the Texas Code of Criminal Procedure.

TEX. CODE CRIM. PROC. art. 1.13(a). He also asked the court of appeals to abate the

appeal for findings and conclusions about his waiver claims. The court of appeals abated

the case,[2] and the trial court concluded that Appellant waived his right to a jury. A

divided court of appeals affirmed the conviction. Appellant filed a *pro se* petition for

discretionary review, arguing that the court of appeals erred because he did not

knowingly and intelligently waive his right to a jury. We will reverse the judgment of the

court of appeals and remand for a new trial.

## FACTS & PROCEDURAL HISTORY

The victim, N.R., told her mother that her father, Appellant, had sexually assaulted

her when she was 7, 8, and 14 or 15-years old, respectively. N.R. alleged that Appellant

touched her breasts in 2008; that he touched her breasts and vagina, digitally penetrated

her vagina and that he forced her to masturbate him in 2009; and that he put his arm

around her shoulder and touched her breasts when they were at a mall in 2015 or 2016.

After her mother reported the abuse, Appellant was arrested and indicted for continuous

---

[2] We have never decided whether a court of appeals can properly abate a case for a trial court to make findings of fact and conclusions of law about whether the right to a jury trial was properly waived. There is a split in the court of appeals. *Compare Munguia v. State*, 636 S.W.3d 750 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (vacating order abating for findings of fact and conclusions of law); *Hutchinson v. State*, No. 11-12-00124-CR, 2014 WL 2957398, at *8 n.2 (Tex. App.—Eastland June 26, 2014, pet. ref'd) (mem. op., not designated for publication) (same), *with Rios v. State*, 626 S.W.3d 408, 410-11 (Tex. App.—Dallas 2021) (abating); *Snider v. State*, No. 08-12-00050-CR, 2013 WL 6671510, at *1 (Tex. App.—El Paso Dec. 18, 2013, pet. ref'd) (mem. op., not designated for publication) (same); *Davidson v. State*, 225 S.W.3d 807, 808 (Tex. App.—Fort Worth 2007, no pet.) (same); *Jackson v. State*, 76 S.W.3d 798, 800 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (same); *Sluis v. State*, 11 S.W.3d 410 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd) (same). We do not resolve the issue, however, because neither party has raised it.

sexual abuse of a child under 14 years old. Appellant pled not guilty. Appellant did not

execute a written jury waiver, and the trial judge did not admonish Appellant about his

right to a jury trial. A jury waiver was never discussed in open court. Appellant testified

at his bench trial that he thought the allegations were fabricated because he refused to pay

for N.R.'s quinceañera. The trial court found Appellant guilty. Appellant also testified at

sentencing. The trial court sentenced him to 35 years' confinement.

Appellant filed a motion for new trial, which was overruled,[3] and a notice of

appeal. He also filed a motion to abate for findings of fact and conclusions of law. The

court of appeals granted the abatement motion and asked the trial court to determine,

>    (1) Whether Appellant executed a written jury waiver,

>    (2) Whether Appellant waived his right to a trial by jury,

>    (3) Whether Appellant consented to a trial before the court
>        without a jury, and

>    (4) Whether the judgment's recitation that Appellant waived the
>        right of trial by jury accurately reflected the trial proceedings.

The trial court determined that Appellant waived his right to a jury, and the court of

appeals affirmed Appellant's conviction based on the trial court's findings.[4]

---

[3] Appellant did not raise the jury-waiver issue in his motion for new trial. The motion was generic and alleged that Appellant was entitled to a new trial because the verdict was contrary to the law and evidence. The court of appeals determined that the motion was overruled by operation of law, *Rios v. State*, 626 S.W.3d 408, 410 (Tex. App.—Dallas 2021), despite the fact that the trial judge signed the motion overruling it.

[4] The precise ground for review asks,

> [T]he decision of the Fifth District Court of Appeals to uphold his conviction holding to John[son] v. State 72, S.W.3d 346, 347(Tex.Crim.App.) is in conflict

# THE THREE-DAY ABATEMENT EVIDENTIARY HEARING

## a. The Testimony

Four witnesses testified during the hearing. Appellant testified that he is a native Spanish speaker and that he reads little English. He remembered regularly attending pretrial court settings and said that trial counsel brought an interpreter to only one of them. Appellant claimed that he was given blank pass slips (boilerplate motions for continuances) to sign,[5] and that trial counsel told him to sign the slips so trial counsel could prove that Appellant was present and get a new court date. Some pass slips were admitted at the hearing. Those from earlier settings have checkmarks next to "Announcement" and specified when Appellant had to return to court. The last four pass slips have checkmarks next to "Trial by the Court." Appellant said that he did not know what "Trial by Court" meant because the form was in English. Appellant recalled one particular pretrial setting when trial counsel returned with a filled-out pass slip and told Appellant that he needed to meet with Gonzales, a probation officer assigned to perform a presentence investigation (PSI).[6] When Appellant went to the meeting, Gonzales

---

with other Court rulings [and] based on the circumstances of Rios's case the Court of Appeals should have held to State EX Rel Curry v. Carr, [847 S.W.2d] 561, 562 (Tex.Crim.App.1992) and reversed Rios' conviction and ordered that he be given a trial by jury as he asked for.

[5] Pass slips are boilerplate motion-for-continuance forms. The pass slips list numerous reasons for a continuance, with a checkbox next to each. Three of those reasons include "Announcement," "Jury Trial (submit ***Order Setting for Trial***)," and "Trial Before the Court (submit ***Order Setting…***)."

[6] This pass slip was dated September 14, 2018 and sought to reset the case to October 25, 2018. On the blank line next to "Other," "PSI 9/26/18 @ 1:30 pm" was filled in.

introduced herself,[7] and during their conversation, she explained what an open plea is and that Appellant would have to register as a sex offender for life if he was found guilty. Appellant next testified that he told trial counsel that he wanted a jury trial, and he remembered doing so because trial counsel responded that a jury trial would cost $5,000 more: "He was charging me [$]10,000 before going to the Judge, and then he charged me another [$]5,000 when I went to tell him [I wanted a jury trial]." Appellant further testified that, when he appeared in court the morning of his bench trial, he believed that he was appearing for only another pretrial setting and that once he realized his trial was about to begin, he told trial counsel to object because he wanted a jury trial.

Gonzales testified that Appellant was confused why he was meeting her. She said that she explained who she is and what she was doing. She also testified that she told him that he might not be eligible for probation if he pled open to the judge[8] and that there was a possibility of a term of confinement and a sex-offender registration requirement.[9]

---

[7] Gonzales spoke Spanish.

[8] This is when a defendant pleads guilty without a plea bargain in place. Also, the record shows that Appellant's case was never set for an open plea.

[9] Defendants convicted of continuous sexual abuse of a child are not eligible for probation or deferred adjudication because the minimum term of confinement is 25 years. TEX. PENAL CODE § 21.02(h) (punishment range for continuous sexual abuse is between 25 to 99 years' confinement or life). People sentenced to more than 10 years' confinement are not eligible for probation or deferred adjudication under the law in effect when Appellant committed the offense or under the current statutes. TEX. CODE CRIM. PROC. art. 42.12, § 3(b)(1) (2014) (defendant not eligible for judge-ordered probation if sentenced to more than 10 years' confinement) (recodified at art. 42A.053(c)(1) (2015)); *id.* art. 42.12, § 4(d)(1) (2014) (same 10-year restriction applies to jury-recommended probation) (recodified at art. 42A.056(1) (2015)); *id.* art. 42.12, § 5(a) (2014) (defendant not eligible for deferred adjudication if sentenced to more than 10 years' confinement) (recodified at art. 42A.103 (2015)); *see id.* art. 42A.102(b)(2)(A)

According to Gonzales, Appellant told her that he did not want to plead open to the charges and that he did not know about the registration requirement, then he left the PSI meeting. Gonzales testified that Appellant never said whether he wanted a jury or bench trial.

Trial counsel testified that he typically had his clients sign blank pass slips, then would walk upstairs and talk to the prosecutor assigned to the case. He also testified that he spoke with Appellant through an interpreter before trial, but he did not say how many times. According to trial counsel, Appellant never discussed an open plea, and he advised Appellant about his "right to a jury trial,"[10] but "[w]e decided to go with none (sic) jury trial." Trial counsel said that the case was set for a bench trial as early as October 2018,[11] and he disputed Appellant's claim that Appellant did not know he was appearing for a bench trial in February 2019. Trial counsel admitted that there is no signed jury waiver in the record, but he testified that he advised Appellant "of his rights"[12] and that he would

---

(2015) (defendant charged with continuous sexual abuse of a child under 14 years of age is ineligible to be placed on deferred adjudication). And defendants convicted of continuous sexual abuse must register as a sex offender. *Id.* art. 62.001(5)(A) (defining a "reportable conviction" for sex-offender registration purposes as including someone convicted of continuous sexual abuse); *id.* art. 62.101(a)(1) (duty to register stemming from conviction for continuous sexual assault requires registration). We also note that a defendant convicted of continuous sexual abuse is not eligible for parole. TEX. GOV'T CODE § 508.145(a)(2).

[10] Trial counsel never specified what advice he gave Appellant.

[11] The case was set for a bench trial before October 2018. It was set for "Trial by Court" when Appellant appeared on September 14, 2018. The reset date was in October. The pass slip is also the first one showing that the State offered a plea bargain: 30 years' confinement.

[12] Trial counsel never clarified which rights he advised Appellant of, and neither party asked.

have had Appellant sign a jury waiver form if he had time to do so. According to trial counsel, the judge told the attorneys that he did not want to try the case because of a previous sexual assault case that still haunted him, but the judge suddenly changed his mind and rushed the parties to trial: "The Judge did not give us time to do anything. We came in, and he told us to sit down. Told the State, call your first witness. That was how we started. We did not sign . . . [the waiver]."

The prosecutor testified that negotiations included the possibilities of a plea bargain, a bench trial, or a jury trial, but never an open plea. She also recalled that trial counsel brought her filled-out pass slips. She could not remember whether a signed jury waiver was executed, but she remembered that trial counsel approached her about conducting a PSI in case Appellant was found guilty.

### b.  The Stipulation

During the evidentiary hearing on abatement, the bare recital in the judgment stating that Appellant waived the right to a jury was discussed. The prosecutor agreed to stipulate that the judgments are prepared by clerks using software that prepopulates parts of the judgment, including that jury waiver recital if the clerk uses the form for defendants convicted after a bench trial.[13]

---

[13] The Office of Court Administration (OCA) is obligated to promulgate standardized felony judgment forms courts are required to use. TEX. CODE CRIM. PROC. art. 42.01, § 4 ("The [OCA] of the Texas Judicial System shall promulgate a standardized felony judgment form that conforms to the requirements of Section 1 of this article. A court entering a felony judgment shall use the form promulgated under this section."). OCA offers different judgment forms drafted in Microsoft Word based on the circumstances. *See* OCA, https://www.txcourts.gov/rules-forms/forms.aspx. For example, if a bench trial was held, as

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court entered the following findings of fact and conclusions and concluded that Appellant is not entitled to relief:

- A jury waiver executed by Appellant is not in the record.

- Appellant speaks Spanish. He was provided with a Spanish-speaking interpreter at the three evidentiary hearing dates, through whom he testified.

- Appellant did not tell the probation assessment officer that he wished to have a jury trial.

- A Dallas County probation assessment officer testified that her report notes indicated Appellant told her he did not want to enter an open plea before the presiding judge.

- Appellant did not tell the probation officer that he did not wish to have a trial before the court.

- Appellant testified that he told his trial counsel he wished to have a jury trial.

- Appellant testified that his trial counsel provided no legal advice to him regarding his right to a jury trial.

- At the October 3, 2019 hearing, Appellant admitted signing three of the four pass slips found in the Court's file continuing the case for "Trial by the Court," the last of which was a continuance for trial before the court on February 28, 2019.

- Appellant changed his testimony at the October 25, 2019 hearing, stating that the signature on the last pass slip, State's Exhibit 4, was not his.

---

happened in this case, the "Judgment of Conviction by Court" form would be used. *Id.* https://www.txcourts.gov/media/1445196/judgment-of-conviction-by-court-010120.doc. That document is titled "JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL." The recital is prefilled in the form and not intended to be altered, unlike the blanks for the cause number, the court, the defendant's name, et cetera. *Id.*

- Appellant's trial counsel testified that he wrote Appellant's signature on State's Exhibit 4 because Appellant did not have his glasses, and Appellant was aware that counsel was signing for him.

- Appellant's trial began on February 28, 2019 and concluded on March 1, 2019.

- Appellant was provided with a Spanish-speaking interpreter at trial, who was sworn in at the beginning of trial.

- The trial judge did not admonish Appellant of his right to a jury trial on the record.

- Appellant testified he did not understand that he was being tried for the case on February 28 and March 1, 2019, even though the record reflects that the judge, Appellant's counsel and the State discussed in open court pre-trial motions that were filed in the case; the trial court arraigned Appellant; Appellant entered a plea of not guilty; witnesses, including the complaining witness, were present, to testify; and Appellant testified in his own defense.

- Appellant testified that he did not ask his trial counsel to object to the trial before the court.[14]

- The district attorney in the case testified that the case had always been set for a trial before the court.[15]

- The district attorney in the case testified that the case "was never set for a jury trial."

- The district attorney in the case testified that a reason for conducting a PSI report for a defendant even though he was opting for trial and not entering a plea is to gather information for the judge to consider when assessing his punishment.

- Appellant's trial counsel testified that he communicated with Appellant before trial using a Spanish-speaking interpreter.

---

[14] The parties agree that this finding is not supported by the record. Appellant testified that he did ask trial counsel to object.

[15] This finding is not supported by the record. The case was on the "Announcement" docket until September 14, 2018, when it was put on the "Trial by Court" docket.

- Appellant's trial counsel testified that he advised his client of his right to a jury trial.

- Appellant's trial counsel testified that the case had been set for a trial before the court since October 2018.

- Appellant's trial counsel testified that Appellant was aware that he was having a trial before the court on the day trial started and knew what a trial was.

- Appellant's trial counsel testified that if he had more time, he would have filed a written jury waiver.

- This Court finds Appellant's testimony that he was not aware of his right to a jury trial to not be credible.[16]

- The Court finds Appellant's testimony that he was not aware he was being tried for the offense on February 28 and March 1, 2019 to not be credible.

- The Court finds Appellant's testimony that he did not voluntarily consent to a trial before the court to not be credible.

### III.

- Appellant did not execute a signed jury waiver.

- Appellant waived his right to a trial by jury.

- Appellant voluntarily consented to a trial before the court without a jury.

- The recitation in the judgment that Appellant waived the right of trial by jury accurately reflects the proceedings, and, other than the incredible testimony of Appellant, the record contains no direct proof of its falsity.

---

[16] The parties agree that this finding is not supported by the record. Appellant was never asked whether he was aware of his right to a jury trial.

## COURT OF APPEALS

Once the appeal was reinstated, Appellant made two arguments.[17] First, he argued that the trial court violated Article 1.13(a) of the Texas Code of Criminal Procedure, which sets out the requirements for a defendant to waive the right to a jury trial and the duties of the trial court. *Rios v. State*, 626 S.W.3d 408, 412 (Tex. App.—Dallas 2021); *see* TEX. CODE CRIM. PROC. art. 1.13. Second, he argued that he did not waive his right to a jury trial. *Rios*, 626 S.W.3d at 412. The court of appeals disagreed on both counts. *Id.* at 416-17. It acknowledged that Article 1.13(a) was violated but concluded that the error was harmless under *Johnson*. *Id.* at 416 (citing *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002)). According to it, we reasoned in *Johnson* that, because the federal constitution does not require a defendant to execute a written jury waiver, Article 1.13(a) error is harmless if the evidence shows that the defendant voluntarily, knowingly, and intelligently waived his right to a jury. *Id.* at 413. The court of appeals also relied on several pass slips (boilerplate motions for a continuance) signed by Appellant showing that the case was set for a bench trial, the lack of an objection from trial counsel before trial, the lack of an objection from Appellant even though he testified during both phases of the trial, Appellant's motion for new trial in which he did not raise the jury waiver issues, and the judgment recitation stating that Appellant waived a jury because there was no direct proof contradicting the recital. *Id.* at 414-16.

---

[17] The State argued in a crosspoint that the judgment incorrectly showed that Appellant was sentenced pursuant to a plea bargain.

### c. Side Opinions

The Chief Justice filed a dubitante opinion.[18] *Id.* at 417. He reluctantly agreed that

the Article 1.13(a) error was harmless under *Johnson* but argued that *Johnson* "disserves

the Constitution and renders meaningless the jury waiver procedure established by the

legislature." *Id.* at 418 (Burns, C.J., concurring). He also doubted that the evidence even

when viewed in light most favorable to the trial court's ruling showed a knowing and

intelligent waiver. *Id.* at 419-20. According to him, the only affirmative evidence is trial

counsel's testimony "claiming that [Appellant] knew about his right to a jury trial and

waived it"; everything else was circumstantial. *See id.* at 418. He also believed that there

was significant evidence weighing against finding that Appellant waived his right to a

jury. *Id.* at 419. For example, he noted that Appellant is a Spanish speaker and that,

- He did not understand he had the right to a jury trial but told his attorney he wanted a jury trial;

- His counsel requested, but may not have received, an additional fee to compensate for the extra work of a jury trial;

- He did not think he had ever signed any paperwork indicating he wanted a trial before the court rather than a jury;

- When he signed pass slips they were blank;

- He did not understand the meaning of the checks marked on the pass slips for a bench trial—shown to him during the hearing regarding whether he waived his right to a jury trial but apparently not after his attorney had checked that box after Rios signed the blank forms— because they were written in English and his attorney informed him only that each was to get a new trial date;

---

[18] "Dubitante" indicates that "the judge doubted a legal point but was unwilling to state that it was wrong." BLACK'S LAW DICTIONARY at 609.

- Only once when he met with his attorney, including the times he signed pass slips, did he have an interpreter;

- At only one of the four pretrial settings did Rios's English-speaking attorney bring an interpreter;

- The pretrial hearings were cursory and no important issues were ever addressed at any of them;

- On the day of his trial he thought he was in court for another hearing;

- Neither the judge nor his attorney informed him he was in court for his trial on the day of his trial;

- The trial judge did not admonish him of his right to a jury trial before commencing the trial;

- He instructed his counsel to object to proceeding on the morning of his trial without a jury;

- He wanted a trial before a jury and never consented to a trial before the court; and,

- His attorney wanted another $5,000 for a jury trial.

*Id.* Chief Justice Burns also said that the trial court's finding that Appellant was not credible when he testified that he did not understand that he would be tried without a jury is not supported by the record. *Id.* at 420. According to him, "the only discussion about credibility in the record is the State's argument . . . that it was 'hard to believe' [Appellant]'s attorney provided no advice whatsoever about proceeding to trial and that on the day of the trial [Appellant] thought he was at another hearing." *Id.* He continued that "the lack of a payment for a jury trial and the information about the judge's reluctance to be the factfinder in a bench trial, if anything, call into question defense

counsel's testimony and not [Appellant]'s" and that "[t]he record is silent as to whether defense counsel relayed this information to his client before the trial began, but it seems highly unlikely that [Appellant] would have persisted in a presumed waiver of a jury had the information been relayed to him." *Id.* The Chief Justice also addressed the pretrial motions. He explained that even though several pretrial motions were discussed in open court, that "creates no inference that [Appellant] knew he was getting and consented to a bench trial since [Appellant] did not speak English and the record provides no basis to believe he had any understanding of the import of the court's ruling on those motions." *Id.* Chief Justice Burns concluded that, while "the record is clear that the trial attorneys wanted a bench trial rather than a jury trial[,] . . . it is far from clear that [Appellant] . . . knowingly and intelligent waived his right." *Id.*

Justice Goldstein authored a dissenting opinion. *Id.* at 421 (Goldstein, J., dissenting). She agreed that *Johnson* has rendered Article 1.13(a)'s requirements to waive a jury meaningless. *Id.* She also argued that the evidence did not show that Appellant waived his right to a jury. *Id.* According to her, the only documents indicating that Appellant waived his right to a jury are pass slips with checkmarks next to "Trial by Court," and the judgment recital. *Id.* On the other hand, she said, Appellant was a Spanish speaker who did not understand written or spoken English, and although "Trial by Court" had been checked on some of the pass slips, the record does not show when the "Trial by Court" box was checked. *Id.* at 419. She also concluded that the record shows that the judgment recital is false and can be given no weight under *Johnson* because "[t]here is no evidence suggesting the boilerplate jury waiver found by the trial judge was given at the

time of trial" "and due to its inclusion as a perfunctory administrative function, electronically signed by a judge who did not try the case . . . ." *Id.* at 427. Justice Goldstein further argued that the failure to obtain a jury waiver is structural error because it affects the framework of the trial and that, as a result, Appellant is entitled to a new trial without a harm analysis. *Id.* at 428.

## DISCUSSION

### a. Appellant's claims were not forfeited by failing to object at trial.

We first discuss preservation of error. Generally, error must be preserved under Rule 33.1 of the Texas Rules of Appellate Procedure. TEX. R. APP. 33.1. Under that rule, the complainant must object and state the ground for the objection with sufficient specificity that the trial court knows what the complainant wants and why the complainant thinks he is entitled to it. *Id.* (a)(1)(A); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity," for preservation purposes, "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."). The complainant must also object when the court can remedy the error, and a ruling on the objection must be obtained unless the trial court refuses to rule. TEX. R. APP. P. 33.1(a)(2)(A)-(B). The specificity requirement is satisfied if the grounds for the objection were apparent from the context. *Id.* (a)(1)(A).

Rule 33.1 does not apply to all alleged errors. Litigant's rights usually fall into three categories: (1) systemic requirements and prohibitions, (2) waivable-only rights, (3)

and forfeitable rights. *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). Rule 33.1 does not apply to complaints about systemic requirements and prohibitions or waivable-only rights. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). Either type of claim can be raised for the first time on direct appeal. *Id.* The right to a jury trial is a waivable-only right. Therefore, Appellant can argue for the first time on direct appeal that he was denied his federal constitutional right to a jury trial and that the procedures required by Article 1.13(a) for waiving a jury were violated notwithstanding his failure to object at trial.

### b. *Carr* is distinguishable.

Appellant argues next that the court of appeals erred because *State ex rel. Curry v. Carr*, 847 S.W.2d 561 (Tex. Crim. App. 1992) (per curiam) should control, not *Johnson*. In that case, the issue was whether the State was entitled to mandamus relief when the trial judge indicated that he would move forward with a bench trial on a misdemeanor even though the State refused under Article 1.13(a) to consent to a jury waiver. *Id.* at 561; TEX. CODE CRIM. PROC. art. 1.13(a). We held that the State was entitled to relief because the consent requirement is a ministerial duty as it "implicates the trial court's authority to preside over a particular type of proceeding." *In re State ex rel. Ogg*, 618 S.W.3d 361, 365 (Tex. Crim. App. 2021). Appellant contends that, if the State's failure to consent to a defendant waiving a jury in favor of a bench trial divests the trial court of discretion to conduct a bench trial, the failure to obtain an express waiver by the defendant under Article 1.13(a) should have the same result. The State responds that *Carr* is distinguishable because it dealt with whether the State consented to a defendant waiving

a jury trial, not whether a defendant waived his right to a jury trial. We agree that *Carr* is distinguishable. Not only did that case address a different issue, it was also in a different posture, but this is a direct appeal, not a mandamus/prohibition case. The merits of Appellant's argument would have been better presented had he sought mandamus and prohibition relief because the judge refused to empanel a jury at Appellant's request, although we believe no reasonable judge would ignore a defendant's request for a jury trial.[19]

### c. *Johnson* is distinguishable.

Third, Appellant argues that *Johnson*'s non-constitutional harm analysis does not apply to his own constitutional claim. The State responds that the *Johnson* statutory non-constitutional harm analysis is informative of Appellant's constitutional claim. Specifically, the State argues that the presumption of regularity applied in *Johnson* should also apply to constitutional no-jury-waiver claims, although it does not explain why. It does, however, cite *Hinojosa v. State*, 555 S.W.3d at 265-66 (citing *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009))[20] for support, but the court of

---

[19] Even if a defendant does not request a jury trial, the trial court has a ministerial duty to impanel a jury. But if a trial court fails to impanel a jury, it is not clear whether a defendant would be entitled to mandamus or prohibition relief because the defendant might have an adequate remedy at law by appealing the trial court's decision after he is convicted following a bench trial. One could argue, however, such a remedy might be inadequate given that a defendant would be required to undergo an entire trial with the wrong factfinder.

[20] In *Hinojosa*, the appellant claimed that it was constitutional error not to obtain a written jury waiver under Article 1.13(a). The court of appeals said that the failure to obtain a jury waiver is not constitutional under Article 1.13(a) so long as the evidence still shows that the defendant waived the right to a jury trial voluntarily, knowingly, and intelligently. It then

appeals in that case applied the presumption of regularity to the appellant's Article 1.13(a) claim, not his constitutional claim. Also, as we explain later, even if the presumption applies to a constitutional no-waiver claim, and even it was not rebutted in this case,[21] the record evidence is nonetheless insufficient to meet the State's burden to show an intelligent and knowing waiver.

### d. We defer to findings fact supported by the record unless there is contrary conclusive evidence and disregard unsupported findings.

Before we turn to the constitutional no-waiver analysis, Appellant argues that we should give less deference to the trial court's findings of fact because two of the findings are not supported by the record. We disagree. A trial court's findings are afforded almost total deference if they are supported by the record, especially when the findings are based on credibility. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Findings unsupported by the record are discarded. *See Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (disregarding a finding of fact not supported by the record but deferring to other findings supported by the record in a motion to suppress). We are aware of no authority holding that a different, less deferential standard should be applied when one or more of a trial court's findings—even credibility findings—are not supported by the record, and Appellant directs us to none. The key to whether a reviewing court defers to a finding of fact is simply whether the finding is reasonably

---

concluded that the statutory error was harmless without addressing the constitutional issue. *Hinojosa*, 555 S.W.3d at 266.

[21] We note also that the judgment was inaccurate in that it reflected that Appellant was sentenced pursuant to a plea bargain.

supported by the record. Here, that means that we disregard the two credibility findings about Appellant's testimony but continue to defer to the other findings that are supported by the record.

> **e. The record in the light most favorable to the trial court's findings shows that Appellant did not knowingly or intelligently waive his right to a jury trial.**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI; *see Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) (applying the Sixth Amendment jury trial guarantee to the states). A defendant has a limited right to waive his constitutional right to a jury trial in favor of a bench trial or pleading guilty. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942); *Hobbs*, 298 S.W.3d at 197; *see* U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. art. 1.12. The right is limited because the State must consent to the waiver, and the trial court must accept it.[22] TEX. CODE CRIM. PROC. art. 1.13(a); *see Singer v. United States*, 380 U.S. 24, 36 (1965) (holding that it does not offend due process to conduct a jury trial in a criminal

---

[22] The United States Supreme Court has said that courts should not accept a jury waiver "as a mere matter of rote but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from [jury trials] or from any of the essential elements thereof, and *with a caution increasing in degree as the offenses dealt with increase in gravity*." *United States v. Boynes*, 515 F.3d 284, 288-89 (4th Cir. 2008) (emphasis in original) (quoting *Patton v. United States*, 281 U.S. 276, 312-13 (1930)). In terms of possible punishment, continuous sexual abuse of a child under 14 years of age is one of only a few offenses that substantially increase the minimum term of confinement for first-degree felonies, and those offenses are surpassed only by a case in which the death penalty is assessed. *See, e.g.*, TEX. PENAL CODE §§ 71.023(b) (minimum punishment increased to 25 years for directing gang activities under certain conditions); 71.02(a), (b)(2) (minimum punishment increased from 5 to 30 years if offense is continuous smuggling of persons that results in sexual assault or serious bodily injury to the victim).

case against a defendant's wishes). Waiver of a constitutional right requires an "intentional relinquishment or abandonment of the right. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). A waiver will not be inferred from a silent record. *Id.* "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Id.* (footnote omitted); *see Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970) (footnote omitted); *see Godinez v. Moran*, 509 U.S. 389, 400-01 (1993) ("The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually . . . understand[s] the significance and consequences of a particular decision."). Whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams*, 317 U.S. at 278. Courts have considered a number of factors as applicable to the facts of the case when determining whether a jury trial waiver was knowing and intelligent. For example, they have considered whether the defendant knew about his right to a jury and the nature of the

right,[23] whether the defendant executed a written jury waiver,[24] whether the trial court

admonished the defendant about his right to a jury,[25] the defendant's education and

---

[23] *See Marone v. United States*, 10 F.3d 65, 68 (2d Cir. 1993) (stating that defendants waiving the right to a jury should be told on the record "of the fundamental attributes of a jury trial before accepting the waiver") (citing *United States v. Martin*, 704 F.2d 267, 274 (6th Cir. 1983) (per curiam)); *Wisconsin v. Smith*, 817 N.W.2d 410, 425 (Wis. 2012) (defendant cannot validly waive the right to a jury unless he has "sufficient awareness of the relevant circumstances and likely consequences"); *Ohio v. Ruppert*, 375 N.E.2d 1250, 1256 (Ohio 1978) ("Irrespective of whether other important tactical considerations entered into his decision to waive a jury trial, Ruppert could not have knowingly, voluntarily and intelligently waived his right where he was misinformed as to the consequences of his decision in being tried before the court."); *Missouri v. Sharp*, 533 S.W.2d 601, 606 (Mo. 1976) (defendant entitled to relief where he and trial counsel believed that defendant would be allowed to withdraw his jury trial waiver if the court refused parole); *see also United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180 (7th Cir. 1983) (the defendant "understood that the choice confronting him was, on the one hand to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge."); *United States v. Kelly*, 712 F.2d 884, 888 (1st. Cir. 1983) ("The type of information . . . which the defendant must possess in order to make a knowing and intelligent waiver of the right to a jury trial relates to his knowledge of his constitutional rights," not strategy); *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007) (agreeing that the *Williams* formulation is sufficient to show a voluntary, knowing, and intelligent waiver); *Louisiana v. Bazile*, 114 So.3d 719, 17 (La. 2013) (quoting *Williams*, 715 F.2d at 1180) (adopting *Williams*).
The Sixth Circuit Court of Appeals has also said in dicta that,

> A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right.

*Martin*, 704 F.2d at 273. Although not constitutionally required, the Second, Eighth, and Tenth circuit courts of appeals have approvingly applied the criteria. *See United States v. Williams*, 951 F.3d 892, 900 (8th Cir. 2020) (concluding that the *Martin* criteria were met); *United States v. Robertson,* 45 F.3d 1423, 1423 (10th Cir. 1995) (applying the *Martin* criteria); *Marone*, 10 F.3d at 68 (suggesting that the criteria in *Martin* would communicate "the fundamental attributes of a jury trial before accepting the waiver") (citing *Martin*, 704 F.2d at 274)).

[24] *United States v. Robinson*, 8 F.3d 418, 422 (7th Cir. 1993) (lack of a written jury trial waiver is probative but not necessarily dispositive of whether the waiver was valid); *North Dakota v. Gates*, 496 N.W.2d 553, 555 (N.D. 1993) ("The trial court, having received no written waiver, should have ascertained in open court whether Gates affirmatively waived her right to a jury trial."); *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985) ("Compliance with the

requirements of [Rule 23(a) of the Federal Rules of Criminal Procedure] creates a presumption that the waiver is a voluntary, knowing and intelligent one.").

[25] While admonishments are preferred by many courts, numerous courts have held a colloquy regarding the waiver of a jury is unnecessary. *See Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (constitution does not require a jury waiver take any particular form); *United States v. Williams*, 559 F.3d 607, 610 (7th Cir. 2009); *Haliym*, 492 F.3d at 698 ("Although an on-the-record colloquy with the court is advisable, it is not constitutionally required.") (citing *Sowell v. Bradshaw*, 372 F.3d 821, 832 n.5 (6th Cir. 2004)); *Martin*, 704 F.2d at 274 (recognizing that "[t]here is no constitutional requirement that a court conduct an on the record colloquy with the defendant prior to the jury trial waiver"); *City of Kalispell v. Salsgiver*, 2019 MT 126, ¶ 51, 396 Mont. 57, 75, 443 P.3d 504, 517 (jury waiver colloquy not constitutionally required); *Marone*, 10 F.3d at 67 ("A court is not constitutionally required to conduct an on the record colloquy with a defendant prior to a waiver of the right to a jury trial."); *Poore v. State*, 681 N.E.2d 204, 208 (Ind. 1997) ("While it is advantageous for a trial judge to engage a defendant in colloquy concerning the consequences of waiving trial by jury, such an exchange is 'not required by either the United States or the Indiana constitutions, or by statute.'").

background and legal sophistication,[26] the level of the defendant's involvement in his

defense,[27] his ability to understand courtroom discussion regarding waiver of a jury,[28] the

---

[26] *Zerbst*, 304 U.S. at 464 (1938) (background and experience of defendant relevant to determining waiver of a constitutional right); *see United States v. Bishop*, 291 F.3d 1100, 1114 (9th Cir. 2002) (no colloquy necessary where the defendant was a "sophisticated business proprietor"); *United States v. Leja*, 448 F.3d 86, 94 (1st Cir. 2006) (same); *see United States v. Sys. Architects, Inc.*, 757 F.2d 373, 375 (1st Cir. 1985) (written jury waiver and colloquy were sufficient where defendants "were a corporation dealing in sophisticated, state-of-the-art computer systems, and its well-educated owner and managers"); *United States v. Anderson*, 704 F.2d 117, 119 (3d Cir.1983) (appellate court noted that the defendant's profession was that of a bookkeeper, she had three years of college education, the district court found that she was an intelligent, alert, and perceptive woman, and trial counsel told the prosecutor that the defendant wanted "one person deciding her fate as opposed to twelve people . . . ."); *United States v. Page*, 661 F.2d 1082, 1082 (5th Cir. 1981) (defendant was a "highly educated and articulate man" who was present when trial counsel told the court that the defendant was waiving a jury and demonstrated no objection or surprise when the waiver was made); *Connecticut v. Rizzo*, 31 A.3d 1094, 1112 (Ct. 2011) ("At the time of the sentencing proceedings, the defendant was twenty-six years old, a high school graduate, . . . had several years of steady employment history," and the record showed he had begun working at 14 years old).

A defendant's prior experience with the criminal justice system is also relevant. *Parke v. Raley*, 506 U.S. 20, 37 (1992) ("[E]vidence of a defendant's prior experience with the criminal justice system [is] relevant to the question whether he knowingly waived constitutional rights."); *see United States v. Guide*, 891 F.3d 744, 748 (8th Cir. 2018) (defendant had on two prior occasions pled guilty after having been advised of his right to a jury trial); *California v. Sivongxxay*, 396 P.3d 424, 435-36 (Cal. 2017) ("[D]efendant had prior experience with the criminal justice system, having pleaded guilty to two prior offenses in which he signed a waiver stating that he "fully underst[ood]" his right to a jury trial); *Illinois v. Bannister*, 902 N.E.2d 571, 584 (Ill. 2008) (the "defendant's criminal record indicates that he was no stranger to the criminal justice system"); *Poore*, 681 N.E.2d at 207 ("Poore's significant criminal history suggests a high level of familiarity with the judicial process, making it quite likely that he knew what a 'jury' was."); *Connecticut v. Shockley*, 453 A.2d 441, 446 (Ct. 1982) (defendant was "twenty-three years old at the time of trial . . . , had completed two years of high school," had experience with the criminal justice system, and the record did not present "a picture of a defendant 'bewildered by court processes strange and unfamiliar to him . . .'") (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)); *Kansas v. Reid*, 463 P.2d 1020, 1023 (Kan. 1970) ("On at least one prior occasion [the appellant] had pleaded guilty to identical charges and had been sentenced to the reformatory. Thus he must have been fully aware, from bitter personal experience, of the meaning of his guilty plea and of the consequences which would flow therefrom.").

[27] *See Davis v. State*, 809 A.2d 565, 573 (Del. 2002) (quoting *Adams*, 317 U.S. at 275) ("There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the

words and actions of the defendant,[29] discussions with trial counsel about the right to a

jury and representations of trial counsel,[30] what language the defendant understands and

the presence of an interpreter if not English,[31] the lack of an objection before or shortly

---

guidance of his own wisdom and not that of a lawyer."); *Ballard v. Wyoming*, 2022 WY 7, ¶ 17, 501 P.3d 1269, 1272 (Wyo. 2022) (stating that "a defendant who moves for a bench trial knowingly and intelligently waives his right to a jury trial"); *Shockley*, 453 A.2d at 446 (defendant had entered and withdrawn pleas and elections).

[28] *Guide*, 891 F.3d at 748 (internal quotation marks omitted) (A district court must consider a variety of factors "including, but not limited to, the extent of the particular defendant's ability to understand courtroom discussions regarding jury waiver"); *Leja*, 448 F.3d at 94 (language and perception barriers relevant to determining waiver of the right to a jury); *Rodriguez*, 888 F.2d at 528 (venire in courtroom when defendant waived jury); *Page*, 661 F.2d at 1082 (judge said in defendant's presence that he understood defendant to be waiving right to jury).

[29] *Zerbst*, 304 U.S. at 464 (words and conduct of defendant relevant to determining waiver of a constitutional right); *United States v. Cirrincione*, 780 F.2d 620, 624 (7th Cir. 1985) (stating that the *Zerbst* standard "for measuring an effective waiver of a constitutional right . . . " applies to waivers of a jury trial); *United States v. Rich*, 589 F.2d 1025, 1032 (10th Cir. 1978) (applying *Zerbst* to the waiver of a jury); *Gov't of Virgin Islands v. Parrott*, 476 F.2d 1058, 1061 (3d Cir. 1973) (same); *see also supra*, note 27 (when the defendant participates in his own defense).

[30] *Page*, 661 F.2d at 1082-83 (waiver valid where it was communicated by defense counsel to the court in chambers and later reaffirmed by the attorney on the record in defendant's presence); *Hoang v. State*, 825 S.W.2d 729, 732 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (trial counsel testified at hearing on motion for new trial that he told defendant about his right to a jury and that they discussed the "pros and cons" of a jury trial).

[31] *Hoang*, 825 S.W.2d at 732 (defendant who spoke Vietnamese and required an interpreter to understand the jury trial waiver form waived his right to a jury where trial court admonished him about his right to a jury); *Martinez v. State*, 449 S.W.3d 193, 200 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (waiver valid where "the State announced that [defendant] was about to finalize a jury-trial waiver," "the State consented to proceeding in a bench trial, "[t]he court-appointed interpreter read the waiver to [defendant], who then signed the document in open court," and defendant was admonished by the judge); *Utah v. Garteiz*, 688 P.2d 487, 488 (Utah 1984) (per curiam) (upholding a waiver of jury trial by a non-native, non-English speaker where counsel represented that he had discussed the defendant's rights with him and the court conducted a four-question colloquy but did not thoroughly discuss all the rights being waived); *Bhag Singh*, 2011 UT App 396, ¶ 14, 267 P.3d 281 (holding that under circumstances

after the bench trial began,[32] and whether there is a docket entry indicating that the

defendant expressly waived his right to a jury on the record and that waiver was

voluntary, knowing, and intelligent.[33] *Hobbs*, 298 S.W.3d at 197 ("As a matter of federal

constitutional law, the State must establish, on the record, a defendant's express,

knowing, and intelligent waiver of jury trial.").

Appellant is a Mexican national and native Spanish speaker whose ability to read

and write English is limited. No jury waiver was executed in this case and the right to a

jury trial was never discussed in open court. While pass slips were admitted at the

abatement hearing, the testimony about them was inconsistent, and the trial court did not

make findings about when the pass slips were filled out, by whom, or whether Appellant

understood the significance of the pass slips marked "Trial by the Court" since he did not

read or understand English well. In the light most favorable to the trial court's ruling, the

record at most shows that trial counsel had his client's sign blank pass slips, which trial

---

where a non-English speaking defendant "had an interpreter while he consulted with his attorney about waiving his right to a jury trial and his attorney requested the bench trial in [the defendant's] presence," the trial court did not plainly err in failing to conduct a colloquy).

[32] *Rios*, 626 S.W.3d at 414; *see Arizona v. Koker*, 513 P.2d 674, 677 (1973) (where the appellant was aware of his right to a jury trial, and he did not object to his trial counsel's assertion that the appellant waived his right to a jury trial, counsel's waiver was binding); *Illinois v. Frey*, 469 N.E.2d 195, 197 (Ill. 1984) ("Recognizing that the accused typically speaks and acts through his attorney, we have given effect to jury waivers made by defense counsel in defendant's presence where defendant gave no indication of any objection to the court hearing the case.")

[33] *See Williford v. Estelle*, 672 F.2d 552, 554-55 (5th Cir. 1982) (citing *Moran v. Estelle*, 607 F.2d 1140, 1144 (5th Cir. 1979)) (unambiguous court records, like a minute entry, can be sufficient to establish the waiver to counsel); *see also Mosby v. Cain*, No. 95-30755, slip. op. at 7 (5th Cir. Mar. 4 1996) ("A minute entry standing alone is not sufficient to establish that the defendant waived his right to trial by jury.").

counsel took to the prosecutor as proof of his client's presence in court and to get obtain a continuance, before returning to give his clients the pink carbon copy of the pass slip. The prosecutor testified that she thought that the pass slips were already filled out when trial counsel gave them to her, but the record is not clear.

Appellant concedes that he knew that he had the right to be tried by a jury, and while that can be a relevant consideration, we do not know on this record the extent of Appellant's knowledge about that right (e.g., that he had an absolute right to a jury trial, that he would receive a jury trial unless he waived the right, that the trial judge told trial counsel that he did not want to try a sexual assault case, etc.). A defendant need not understand every nuance of the right to a jury before waiving that right (and we decline to adopt any definitive statement), but a waiver cannot be knowing and intelligent unless the record shows that the defendant at least had sufficient awareness of the relevant circumstances and likely consequences of waiving his right to a jury. *Brady*, 397 U.S. at 748 (footnote omitted); *see Godinez*, 509 U.S. at 400-01 ("The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually . . . understand[s] the significance and consequences of a particular decision."); *Garza v. State*, 100 S.W.3d 347, 348 (Tex. App.—San Antonio 2002, no pet.) (trial counsel "advised [the appellant] of his right to a jury trial, explained to [the appellant] his ability to waive that right, and discussed the potential advantages and disadvantages of such a waiver"). Here, the record shows that trial counsel vaguely testified that he advised Appellant "of his right to a jury trial" and later said, "[w]e had our option. We decided to go with none (sic) jury trial," but it does not show, because no one asked, what

advice trial counsel gave to Appellant about his right to a jury. Also important in this case is that trial counsel testified that the judge said that he did not want to try the case. Trial counsel did not say (again he was not asked) whether he told Appellant that the judge did not want to try his case, but it appears not. According to trial counsel, after making the comment, the judge immediately called the parties back and said that he changed his mind and would try the case; the judge then commenced the trial. While there might have been insufficient time for trial counsel to confer with Appellant about the judge's comment, the comment was a relevant circumstance about which almost any defendant charged with one of the most serious sexual assault related crimes would have wanted to know.

The docket sheet indicates that Appellant was arraigned, but the reporter's record shows that the arraignment did not include an admonishment about the right to a jury. Rather, the trial court simply accepted Appellant's not guilty plea.[34] Under *Patton*, the

---

[34] The trial court also appeared to believe that probation was a possibility for continuous sexual abuse of a child under 14. After the State read the indictment during the arraignment, the following exchange took place before the trial began,

| COURT: | Okay. Mr. Rios, to that charge, sir, how do you wish to plead; guilty or not guilty? |
|---|---|
| [APPELLANT]: | Not guilty. |
| COURT: | All right. The Court will enter a not guilty plea. All right. You can be seated. |

(Defendant complies)

| COURT: | All right. Do you want to make an opening statement? |

[PROSECUTOR]:    No, Your Honor.

COURT:    Okay. Does the Defense wish to make an opening statement?

[TRIAL COUNSEL]: No, your Honor. We will reserve our case-in-chief.

COURT:    Got it. Will do. Call your first witness.

COURT:    All right. We're on the record in Cause No. F17-24112-H, styled State of Texas versus Saul Ranulfo Herrera Rios. And you're Mr. Rios?

[APPELLANT]:    Yes.

COURT:    Good afternoon. I'm Justice Ritcher. And we're going to swear in the translator first.

(Interpreter sworn)

COURT:    Thank you. Very good. All right. Are there any pretrial motions or anything?

[TRIAL COUNSEL]: No, Judge.

[PROSECUTOR]:    Your Honor, State did file pretrial motions, but I believe we had pretrial on the case prior to today.

COURT:    Okay. Are they all agreed to? Any objections to pretrial motions? I don't know what they are. I haven't seen them.

[TRIAL COUNSEL]: No, Your Honor.

[PROSECUTOR]:    Would Your Honor like a copy?

COURT:    Yeah. It would help. On behalf of the Defense, are there any objections?

[TRIAL COUNSEL]: No, Your Honor.

COURT:    Okay. I'll sign off on this, then. Okay. With that being said, let me go ahead and swear in the Defendant while we're here. Sir, if you will raise your right hand, please.

Supreme Court of the United States has said that a trial court should not discharge its duty of accepting a defendant's jury waiver as a "mere matter of rote . . . ." Instead, it should exercise increasing caution based on the severity of the offense and sentence to jealously guard the right to a jury trial. Here, the trial court did not accept an express jury waiver from Appellant, much less as a rote matter, and as we have noted, continuous sexual abuse of a child under 14 years of age is one of the most severe offenses in Texas.

In cases in which a defendant's sophistication has been considered, courts consider both the background and education of the defendant as well as his legal acumen. The record shows, as we have noted, that Appellant is a Mexican national and native Spanish speaker who does not read or write English well. There is no evidence about Appellant's education, and the record does not show that Appellant was a sophisticated person with

---

(Defendant sworn)

[APPELLANT]:          Yes.

COURT:                All right. Thank you very much. All right. Does the State
                      want to make an opening statement?

During the punishment phase, it appeared that the trial court did not know the punishment range for the offense:

COURT:                With that being said we will proceed with punishment. Is
                      the defendant eligible for probation?

[PROSECUTOR]:         No, Your Honor.

COURT:                Okay. And the punishment range, this is a first, isn't it?

[PROSECUTOR]:         This is continuous, so it is 25 to life.

legal acumen, competently navigating his way through the Texas criminal justice system. It shows the opposite. Appellant could not interact with anyone without a Spanish speaking interpreter, and trial counsel's testimony shows that he represented Appellant in all aspects of the case from pretrial negotiations to sentencing.

We now examine some of the trial court's other findings. The trial court found that Appellant met with a Dallas County probation officer (Gonzales) and that Appellant did not tell Gonzales that he wanted to enter an open plea, that he wanted a jury trial, or that he did not want a bench trial. These findings are supported by the record but do not inform whether Appellant expressly, knowingly, and intelligently waived his right to a jury trial. A defendant need not tell a probation officer that he wants a jury trial. A jury trial is the default mode of trial and must be held unless a defendant waives the right to a jury, the State consents, and the trial accepts the defendant's waiver. *See* TEX. CODE CRIM. PROC. art. 1.15 ("No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14."); *see id* art. 1.13 (procedure for waiving a jury trial). The trial court found credible the prosecutor's testimony that the case had always been on the "Trial Before the Court" docket, but the record does not support that finding. The case was on the "Announcement" docket for some time. The prosecutor also testified that trial counsel asked her to put the case on the "Trial Before the Court" docket and that trial counsel never said if that was what his client wanted. If Appellant had told Gonzales or

the prosecutor that he did not want a jury trial or that he did or wanted a bench trial, those facts might present a different situation, but that is not what happened here.

The trial court further found that trial counsel testified that he would have filed a written jury waiver if he had more time. While that might be true, this finding also does not inform the jury waiver inquiry without more specificity. The record does not reflect why counsel would have had Appellant execute a written jury waiver if he had more time, only that he would have. Maybe trial counsel would have induced Appellant to execute a waiver because trial counsel preferred a bench trial, or maybe they had discussed the issue, and Appellant wanted to waive a jury, but as trial counsel testified, they were too rushed. On this record, we do not know.

We finally turn to the judgment recital. At the outset, we note that the recital merely states that, "Defendant waived the right of trial by jury and entered the plea indicated above." It does not speak to whether the defendant expressly, intelligently, and knowingly waived the right to a jury, which is the inquiry here. It does, however, state that a defendant knowingly and intelligently waives his right to counsel if he pleads guilty. Application of the presumption of regularity to a constitutional no-waiver claim (unlike an Article 1.13(a) claim), seems inappropriate given that it does not inform the knowing and intelligent inquiry and because the burden is on the State on direct appeal to develop a record showing an express, knowing, and intelligent waiver of a defendant's right to a jury. *Hobbs*, 298 S.W.3d at 197. Given that the burden of proof is on the State and the sparse record in this case, we are forced to conclude that the evidence is

insufficient to show that Appellant expressly, knowingly, and intelligently waived his right to a trial by jury.

### f. Harm

Having concluded that the evidence is insufficient to show that Appellant knowingly and intelligently waived his right to a jury trial, we now turn to the issue of harm and whether a violation of the constitutional right to a jury trial is subject to a harmless-error analysis. The parties and majority agree that a violation of a defendant's right to a jury trial is structural error defying a harm analysis because the error affected the framework of the trial. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). So do a number of other courts.[35] This is a question that neither this Court nor the United States

---

[35] *See, e.g.*, *Fortune v. United States*, 59 A.3d 949, 957 (D.C. 2013) (denial of the right to a jury is structural error); *Miller v. Dormire*, 310 F.3d 600, 604 (8th Cir. 2002) ("When a defendant is deprived of his right to trial by jury, the error is structural and requires automatic reversal of the defendant's conviction."); *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998) ("[W]e conclude that the denial of a jury trial is a structural error subject to automatic reversal."); *United States v. Duarte-Higareda*, 113 F.3d 1000, 1003 (9th Cir. 1997) (denial of the right to a jury is structural error); *North Dakota v. Martinez*, 956 N.W.2d 772, 782 (N.D. 2021) (denial of right to a jury trial implicates structural error); *Idaho v. Vasquez*, 416 P.3d 108, 114 (Idaho 2018) (structural error not to obtain a defendant's consent to waive the right to jury trial and the waiver must be voluntary, knowing, and intelligent); *Boulden v. Maryland*, 995 A.2d 268, 282 (Md. 2010) ("The actual denial of the unwaived right to trial by jury is ordinarily a structural error and is not subject to harmless error review."); *Balbosa v. Georgia*, 571 S.E.2d 368, 369 (Ga. 2002) (denial of right to a jury is not subject to harmless-error analysis); *California v. Collins*, 27 P.3d 726, 736 (2001) (finding that the trial court's improper inducement of a jury-trial waiver amounted to a structural defect); *Massachusetts v. Pavao*, 672 N.E.2d 531, 535 (Mass. 1996) ("To allow harmless error analysis of this sort is inconsistent with the right to a jury trial altogether."); *Wisconsin v. Cleveland*, 184 N.W.2d 899, 901 (Wis. 1971) (automatic reversal required under Wisconsin Constitution if the right to a jury is denied); *Bell v. Indiana*, 173 N.E.3d 709, 718 (Ind. Ct. App. 2021) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279-82 (1993)) (denial of a jury trial without a valid waiver is structural error); *Kansas v. Hosler*, 259 P.3d 748 (Kan. Ct. App. 2011) ("Hosier did not effectively waive his right to a jury trial which constitutes reversible error."); *Michigan v. Cook*, 776 N.W.2d 164, 168 (Mich. 2009) (denial of the right to a jury trial is structural error); *Arizona v. Le Noble*, 164 P.3d 686, 690 (Az. Ct. App. 2007) ("[T]he

Supreme Court has resolved. This Court does not usually recognize structural errors until the United States Supreme Court identifies them,[36] but we believe resolution of this issue is sufficiently clear that we will deviate from our usual practice and hold that a violation of the federal constitutional right to a jury trial is structural error.

In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), the United States Supreme Court held that the submission of an unconstitutional definition of "reasonable doubt" was structural error because it deprived the defendant his right to a jury trial and a verdict of guilt beyond a reasonable doubt. *Id.* at 278 (right to jury trial was denied), 281 (denial of the right to a jury verdict beyond a reasonable doubt is structural error). In analyzing the issue, the Supreme Court said that "[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* at 279 (emphasis in original). We conclude that the Supreme Court's reasoning in *Sullivan* controls the issue here even though *Sullivan* and this case deal with different types of violations of the right to a jury. In fact, we believe that the facts of this case are even more compelling than those in *Sullivan*. A court could conceivably attempt to determine whether the *Sullivan* jury would have convicted the petitioner despite the

complete failure of the trial court to notify and explain to a defendant the right to a jury trial and to obtain a knowing, intelligent and voluntary waiver of that right" is structural error).

[36] *See Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) ("Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.")

incorrect "beyond a reasonable doubt" instruction (although the Supreme Court has rejected this analysis), but Appellant was completely denied his constitutional right to a jury and attempting to determine harm would require hypothesizing what verdict a fictional jury would have rendered based on evidence it never heard.

## CONCLUSION

Having concluded that the record does not expressly show that Appellant knowingly and intelligent waived his right to a jury, and because the error is structural, we reverse the judgment of the court of appeals and remand this cause for a new trial.

Delivered: December 7, 2022

Publish